82 P.3d 698 (2004)
119 Wash.App. 730
STATE of Washington, Appellant,
v.
Vern L. ZAWISTOWSKI and Katonya Zawistowski, Respondents.
No. 29454-1-II.
Court of Appeals of Washington, Division 2.
January 13, 2004.
*699 Alicia Marie Burton and Maureen Goodman, Tacoma, WA, for Appellant.
Brian Patrick McLean, Law Office of Brian P. McLean, Kent, WA, for Respondents.
BRIDGEWATER, J.
The State appeals the superior court's order reversing Vernon and Katonya Zawistowski's convictions for second degree animal cruelty. The State asserts that sufficient evidence existed that two underweight and malnourished horses felt pain due to the Zawistoskis' failure to provide necessary food. We agree and reverse the superior court. The Zawistowskis' convictions for second degree animal cruelty, two each, are reinstated.
In late March 2001, Tasha Deptula moved out of state for work, requiring her to seek a new home for her horse, Princess Tarzana. Princess Tarzana was a 26 or 27-year-old white mare that Deptula described as a "pretty chubby horse." Report of Proceedings (RP) at 128. Deptula placed an ad at local feed stores and received several responses.
One response came from the Zawistowskis, who themselves kept several horses, including a horse named Silver, at their Pierce County property. The Zawistowskis visited Princess Tarzana several times and took possession of her at the end of March 2001. At that time, Princess Tarzana was in good physical condition, but not skinny.
Deptula next saw Princess Tarzana on June 21 of the same year. By this time, the Pierce County Humane Society had served a warrant on the Zawistowski property and seized five horses, including Princess Tarzana and Silver. Pierce County had received complaints about the horses' condition from several neighbors and other individuals. When seized, the horses appeared severely underweight, there was little vegetation on the ground inside their paddock or suitable food on the property, and they had little or no protection from the elements.
Pierce County charged Vern and Katonya Zawistowski, individually, with various crimes, including six counts of second degree animal cruelty. The Zawistowskis were tried jointly in district court. The trial evidence consisted of testimony from various neighbors, several Pierce County Humane Society officers and other county officials, and several veterinarians. The State's evidence indicated a poorly maintained paddock with little vegetation or shelter, and it described several ailments that the horses were suffering. Specifically, the State's veterinarian testified that Princess Tarzana and Silver suffered from poor dentition and that they were severely underweight. The State also introduced various photographs of the horses, which generally depicted skinny animals with protruding bones. The evidence also reflected a paucity of suitable equine food at the Zawistowski property.
The jury returned a guilty verdict for the Zawistowskis on two charges of second degree animal cruelty. These counts pertained specifically to Princess Tarzana and Silver. On appeal to the superior court, however, the court reversed these convictions, finding the evidence insufficient to support the jury's verdicts. The State challenges this ruling.
Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it permits any rational trier of fact to find all of the essential elements of the crime beyond a reasonable doubt. State v. Joy, 121 Wash.2d 333, 338, 851 P.2d 654 (1993). A claim of insufficiency admits the truth of the State's evidence and requires that all reasonable inferences therefrom be drawn in favor of the State and interpreted most strongly against the defendant. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence is accorded equal weight with direct evidence. State v. Delmarter, 94 Wash.2d 634, 638, 618 P.2d 99 (1980). In reviewing the evidence, we give deference to the trier of fact, who resolves conflicting testimony, evaluates the credibility of witnesses, and generally weighs the persuasiveness of the evidence. State v. Walton, 64 Wash.App. 410, 415-16, 824 P.2d 533 (1992), review denied, 119 Wash.2d 1011, 833 P.2d 386 (1992).
An owner of an animal is guilty of second degree animal cruelty if he or she *700 knowingly, recklessly, or with criminal negligence
[f]ails to provide the animal with necessary food, water, shelter, rest, sanitation, ventilation, space, or medical attention and the animal suffers unnecessary or unjustifiable physical pain as a result of the failure.
RCW 16.52.207(2)(a).
Jury instruction 12 defined "[n]ecessary [f]ood" as "the provision at suitable intervals of wholesome foodstuff suitable for the animal's age and species and sufficient to provide a reasonable level of nutrition." Clerk's Papers at 125. The superior court did not reverse Zawistoski's conviction for insufficient evidence on this element, which was proper as the requisite quantum of proof certainly existed. As noted above, evidence showed that the horses' paddock lacked adequate vegetation, that the food that was on the property did not meet the veterinarian's recommended daily allowances, and that the horses were severely underweight. A reasonable inference from this evidence is that the Zawistowskis knowingly, recklessly, or with criminal negligence failed to provide necessary food.
The superior court's ground for reversal was, instead, insufficient evidence that Princess Tarzana and Silver suffered pain. As "pain" is not defined by the statute, we must give it its ordinary, dictionary meaning. State v. Edwards, 84 Wash.App. 5, 10, 924 P.2d 397 (1996), review denied, 131 Wash.2d 1016, 936 P.2d 416 (1997). WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1621 (1969) defines "pain", in pertinent part, as "a state of physical or mental lack of well-being or physical or mental uneasiness that ranges from mild discomfort or dull distress to acute often unbearable agony." WEBSTER'S II NEW COLLEGE DICTIONARY 539 (1999) defines "hunger" as "[t]he discomfort, weakness, or pain caused by a lack of food."
The State had essentially two theories on pain. First, it theorized that the horses suffered pain as a result of "serious problems with their teeth." Br. of Appellant at 29. Evidence suggesting the poor condition of the teeth was certainly supportive. The veterinarian testified that Princess Tarzana "had some real serious teeth problems," RP at 486, including "hooks" on the upper front and lower back teeth that needed to be "floated,"[1] RP at 465, 467, and her lower left jaw teeth "were pointing in all different directions." RP at 488. Silver also needed her teeth floated, "[h]er lower left first tooth was split," and she had "the regular old sharp points that needed to be floated down." RP at 488.
But poor dentition alone does not constitute second degree animal cruelty. It must have caused unnecessary pain. On this point, the veterinarian testified that Silver may have experienced "some uncomfortableness when she was eating[] because of the points and because of that one tooth that was split in half." RP at 488. She also stated, "I think to some degree there would be some pain associated with [the horses' poor dentition]." RP at 491. Although this evidence may have been thin, it enabled a rational determination that the horses' poor dentition caused, at the very least, "mild discomfort." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1621. This was sufficient for a finding of "pain" under RCW 16.52.207(2)(a).
But the State's burden did not end with pain either: it was also required to prove a causal connection between the horses' poor dentition and the Zawistowskis' neglect. Thus, the evidence was sufficient only if it enabled a rational choice that the horses' poor dentition resulted from a knowing, reckless, or criminally negligent act by the Zawistowskis. See RCW 16.52.207(2)(a).
Our review of the evidence reveals just one short colloquy on point. The veterinarian stated that the horses' dentition problems "would normally be the subject of routine preventative care." RP at 490. She continued, "[s]tandard is once a year to  horses get their teeth checked and floated, if they *701 need to be floated. And while they're under sedation, you can find these things that may be a problem and keep them from becoming really bad, by doing them once a year." RP at 490.
Evidence established that the Zawistowskis had possession and care of Princess Tarzana for just a short time during spring 2001  from the "end of March" to June 21st of the same year. RP at 131. If the standard of care was maintenance once a year, as the State's evidence suggested, then the Zawistowkis cannot be said to have failed in their duty of maintaining a horse that was in their possession for a mere three months. Thus, as to the poor dentition theory applicable to Princess Tarzana, the evidence was insufficient.
The same is not true for Silver, however. Evidence suggests that the Zawistowskis possessed Silver for several years.
As this is a sufficiency challenge, we allow reasonable inferences from the evidence. Examined in this light, the evidence of pain caused by Silver's dental condition was sufficient because the veterinarian's testimony, though not entirely certain that the horses felt pain, provided the factual basis from which the jury could have rationally concluded that the horses felt pain. The poor dentition of Silver alone supports the convictions concerning the counts pertaining to Silver; but we find other support for convictions concerning both horses discussed below.
The State theorized, secondly, that the horses suffered pain as a result of being "severely underweight." Br. of Appellant at 29. The Zawistowskis acknowledge that the horses were underweight,[2] responding only that "no evidence [indicated] that the horses were suffering pain as a result of their diet or pasture conditions." Br. of Resp't at 7.
The jury heard testimony from several neighbors, Humane Society officers, and the aforementioned veterinarian, all of whom supported the State's theory that the horses were underweight and malnourished. Specifically, the veterinarian testified that Princess Tarzana was "pretty much a rack of bones," that her jawbone was very prominent, her eyes were sucked in, and her backbone and ribs were showing. RP at 467. The veterinarian stated that Silver was also severely underweight and had protruding ribs, pelvis, and jawbone.
That Princess Tarzana and Silver felt extreme hunger is a reasonable inference from this evidence. And that extreme hunger is capable of causing at least "mild discomfort" is also a reasonable inference. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1621. The nature of our sufficiency review requires that we accept these inferences. Therefore, sufficient evidence indicates that Princess Tarzana and Silver suffered unnecessary and unjustifiable "pain"[3] under the governing definition of the term. The superior court erred in reversing; the evidence was sufficient.
Reversed and the criminal convictions are ordered reinstated.
We concur: HOUGHTON, P.J., and ARMSTRONG, J.
NOTES
[1] According to the veterinarian, "hooks" are the sharp points on a horse's teeth that occur when misalignment in the jaw prevents the natural filing down of teeth during the horse's side-to-side chewing action. CP at 465, 489. Hooks "can get fairly large[] and sometimes cut into the gum." CP at 489. "Floating" refers to a process in which the sharp points are manually filed off. CP at 465.
[2] Pictorial exhibits, which show protruding ribs and hip bones, and the veterinarian's testimony provided adequate basis for a rational conclusion that the horses were underweight. And although, once again, the parties do not discuss the issue of cause, evidence also sufficiently indicated that the underweight condition resulted from the Zawistowskis' knowing, reckless, or criminally negligent failure to provide necessary food.
[3] The pain was unnecessary and unjustifiable because merely providing adequate food would have stopped it.