114 P.3d 1230 (2005)
In the Matter of the Testamentary Trusts Created for the Benefit of Donald M. BAROVIC, Respondent,
v.
Tanya PEMBERTON, Appellant.
No. 32467-9-II.
Court of Appeals of Washington, Division 2.
June 21, 2005.
*1231 David Newell Land, John R. Spencer, Spencer & Loescher PLLC, Tacoma, WA, for Respondent.
Thomas George Krilich, Attorney at Law, Tacoma, WA, for Appellant.
HOUGHTON, P.J.
¶ 1 Acting as a court-appointed trustee, Tanya Pemberton filed intermediate accountings for the years 1998 through 2003. In 2004, she realized that she had incorrectly charged principal mortgage payments against the income account from 1999 through 2002 and she reimbursed the income account.[1] Although the trial court approved the intermediate accounting, it ordered that the principal credit the income account for $11,409.04 in interest. Pemberton appeals. We reverse and remand.

FACTS
¶ 2 In her will, Andrea Barovic created a testamentary trust for the benefit of Donald Barovic (Barovic) and others. The court appointed Pemberton to act as trustee.
¶ 3 The trust contained several assets, including the Parkland Theater. In August 1997, the court approved Pemberton's sale of the Parkland Theater. Using a 26 U.S.C. § 1031 deferred exchange, she acquired the Canyon Creek Apartments. She funded this purchase with proceeds from the Parkland Theater sale and a mortgage.
¶ 4 Beginning in 1999, Pemberton filed yearly intermediate accountings in which she itemized the "net rental income" from the Canyon Creek Apartments as income received for the income account.[2] Clerk's Papers (CP) at 41. When calculating the net rental earnings, she included interest and principal payments on the mortgage. But under RCW 11.104A.250 and .260, she should have charged the interest payment against the income account and the principal payment against the principal account.[3]
¶ 5 Every year the court approved the intermediate accounting. Barovic never appealed.
¶ 6 In 2004, Pemberton corrected the mistake.[4] She charged $49,255.72 against the *1232 principal account, reimbursing the income account.
¶ 7 The court approved the intermediate accounting, except it ordered the principal account to reimburse the income account for $43,335.04.[5] Further, it ordered that the principal account credit the income account for $11,409.04 in interest.
¶ 8 Pemberton appeals.

ANALYSIS

INTEREST
¶ 9 Under RCW 11.106.080, Pemberton argues that the intermediate accountings became final and binding when Barovic failed to appeal. Because he had no right to demand adjustments to the past accountings, Pemberton contends that Barovic had no right to demand interest on the reimbursed sums.
¶ 10 RCW 11.106.070 provides, in relevant part:
[T]he court without the intervention of a jury and after hearing all the evidence submitted shall determine the correctness of the account and the validity and propriety of all actions of the trustee or trustees set forth in the account including the ... disposition of any of the property and funds of the trust, and shall render its decree either approving or disapproving the account or any part of it, and surcharging the trustee or trustees for all losses, if any, caused by negligent or wilful breaches of trust.

(Emphasis added.)
¶ 11 RCW 11.106.080 addresses the effect of the trial court's decree:
The decree rendered under RCW 11.106.070 shall be deemed final, conclusive, and binding upon all the parties interested including all incompetent, unborn, and unascertained beneficiaries of the trust subject only to the right of appeal under RCW 11.106.090.
(Emphasis added.)
¶ 12 The parties do not cite case law and we find none discussing the interaction of RCW 11.106.070 and .080. Thus, we turn directly to the statutory language.
¶ 13 As a question of law, we interpret statutes de novo. W. Telepage, Inc. v. City of Tacoma Dep't of Fin., 140 Wash.2d 599, 607, 998 P.2d 884 (2000). Construing the language as a whole, our primary goal is to give effect to the legislature's intent. State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003).
¶ 14 If a statute's meaning is plain on its face, we give effect to that plain meaning. McGinnis v. State, 152 Wash.2d 639, 645, 99 P.3d 1240 (2004). We derive plain meaning from the relevant statute and any related statutes that disclose legislative intent about the provision in question. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 11, 43 P.3d 4 (2002).
¶ 15 An ambiguous term is one fairly susceptible to different, reasonable interpretations. McGinnis, 152 Wash.2d at 645, 99 P.3d 1240. A statute is not ambiguous simply because the court can conceive different interpretations. Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles, 148 Wash.2d 224, 239-40, 59 P.3d 655 (2002), cert. denied, 538 U.S. 1057, 123 S.Ct. 2221, 155 L.Ed.2d 1107 (2003).
¶ 16 Chapter 11.106 RCW contains no definitions section.[6] We give an undefined term its ordinary meaning, as found in the dictionary. State v. Zawistowski, 119 Wash. App. 730, 734, 82 P.3d 698, review denied, 152 Wash.2d 1010, 99 P.3d 896 (2004). Webster's Dictionary defines "final" as "not to be altered or undone." WEBSTER'S THIRD NEW INT'L DICTIONARY 851 (1976). "Conclusive" means "putting an end to debate or question *1233 esp. by reason of irrefutability." WEBSTER'S, at 471. And "binding" is defined as "requiring submission, conformity, or obedience." WEBSTER'S, at 217.
¶ 17 Here, the statutory language is unambiguous. RCW 11.106.070 requires the court to determine "the correctness of the account and the validity and propriety" of the trustee's actions. In its evaluation, the court reviews the disposition of trust funds. In the decree, the court must either approve or disapprove the accounting. RCW 11.106.070. Further, it surcharges the trustee "for all losses ... caused by negligent or wilful breaches of trust." RCW 11.106.070.
¶ 18 The decree is subject only to the right of appeal. RCW 11.106.080. When the time to appeal expires, the decree is "final, conclusive, and binding" on all interested parties, even "incompetent, unborn, and unascertained beneficiaries." RCW 11.106.080. At that time, the decree becomes irrefutable, requires submission, and cannot be altered or undone.
¶ 19 Based on the plain meaning of RCW 11.106.070 and .080, Barovic cannot now seek interest on the reimbursed sums. Under RCW 11.106.070, the court approved every accounting and Barovic never appealed. When the appeal period expired, the decrees became "final, conclusive, and binding." RCW 11.106.080. Because he "was deprived of those funds for five years," Barovic claims that he suffered losses due to Pemberton's negligence or breach of fiduciary duty. Br. of Resp't at 6. But the decrees were not just "final, conclusive, and binding" as to the propriety of Pemberton's actions and disposition of trust funds. They were also "final, conclusive, and binding" as to any surcharge for losses caused by Pemberton's negligent or willful breaches of trust. When he failed to appeal, Barovic relinquished his right to recover these losses and the trial court erred when it awarded interest on the reimbursed sums.[7]

ATTORNEY FEES ON APPEAL
¶ 20 Barovic requests attorney fees on appeal. RAP 18.1(a) provides that attorney fees are available on appeal "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses on review." RCW 11.96A.150 accords us discretion to award attorney fees in a trust proceeding. As Barovic did not prevail, he is not entitled to attorney fees on appeal and we decline to award them.
¶ 21 Reversed and remanded.
We concur: BRIDGEWATER and VAN DEREN, JJ.
NOTES
[1] Pemberton filed the 2003 accounting in 2004.
[2] Pemberton's description of this net rental income varied over the years. See Clerk's Papers (CP) at 41 ("Net rental income from apartment building received from management company"); CP at 60 ("Net rental income from apartment building received from management company, after debt service, maintenance, repairs and management fees, and security deposits").
[3] Entitled "The Washington Principal and Income Act of 2002," chapter 11.104A RCW replaced former chapter 11.104 RCW (2000). Pemberton had a similar duty to segregate interest and principal mortgage payments under former RCW 11.104.130(1)(a) and (3)(b) (1985).
[4] Pemberton claims that she realized her mistake and voluntarily corrected the error. In contrast, Barovic states that his accountant found Pemberton's mistake. It is unclear from the record who identified the error, but this does not alter our analysis.
[5] Apparently, Barovic requested interest on the reimbursed sums at the hearing. We cannot discern the actual procedural posture because the parties did not provide the report of proceedings. Also, Pemberton apparently revised the amount due to $43,335.04. The trial court accepted this revised sum.
[6] RCW 11.02.005 defines some terms found in Title 11 RCW. But it does not define the words relevant to our analysis.
[7] Barovic claims that Pemberton breached her fiduciary duty. But he never filed an action for breach of fiduciary duty. See RCW 11.96A.070(1)(a) (actions for breach of fiduciary duty have three-year statutes of limitation). And there are no indications that the trial court heard evidence or ruled on any alleged negligence or breach of fiduciary duty. Accordingly, this argument fails.