FILED
COURT OF APPEALS
DIVISION II

2013 OCT -1 AM 9:09

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| RACHEL MARGUERITE ANDERSON (formerly RACHEL M. RODGERS),<br><br>Appellant,<br><br>v.<br><br>WILLIAM L.E. DUSSAULT and JANE DOE DUSSAULT, husband and wife, and the marital community composed thereof; BARBARA J. BYRAM and JOHN DOE BYRAM, wife and husband, and the marital community composed thereof; YEVGENY JACK BERNER and JANE DOE BERNER, husband and wife, and the marital community composed thereof; WILLIAM L.E. DUSSAULT, PS, a Washington professional service corporation; the DUSSAULT LAW GROUP, a Washington corporation; RICHARD MICHAEL McMENAMIN and SHARI L. McMENAMIN, husband and wife, and the marital community composed thereof; McMENAMIN & McMENAMIN PS, a Washington professional service corporation; and WELLS FARGO BANK, N.A., a foreign corporation,<br><br>Respondents, | No. 43280-3-II<br><br><br>PUBLISHED OPINION |

No. 43280-3-II

ANDREA DAVEY (fka ANDREA
RODGERS) and JOHN DOE DAVEY,
husband and wife, and the marital community
composed thereof,

Defendants.

QUINN-BRINTNALL, J. — Shortly before her 21st birthday, Rachel Anderson brought suit against a host of defendants she believed mismanaged the "special needs" trust established for her when she was injured as a minor.[1] In her complaint, Anderson alleged that the two members of the "trust advisory committee"—her mother Andrea Davey,[2] and attorney Richard McMenamin—and the trustee, Wells Fargo Bank, N.A., breached their fiduciary duties by approving trust disbursements contrary to the spirit of the trust. Anderson also alleged that William Dussault, the attorney hired by Wells Fargo to submit annual reports for court approval, committed legal malpractice.

McMenamin, Dussault, and Wells Fargo all moved for summary judgment, arguing, inter alia, that Anderson's claims were barred by the Trustees' Accounting Act, ch. 11.106 RCW, res judicata, or judicial estoppel. Alternatively, each defendant argued that the trust's express language allowed for the disbursements in question and Anderson's claims failed, as a matter of

_____

[1] 42 U.S.C. § 1396p(d)(4)(A) allows for the creation of "special needs" trusts for disabled individuals under the age of 65. Payments made from such a trust are not considered income and the trust corpus is not considered a resource available to the trust beneficiary (for purposes of taxation or social services eligibility) so long as "the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan." 42 U.S.C. § 1396p(d)(4)(A). Here, because both parties refer to the trust as a "special needs" trust, we do not analyze whether this trust in fact satisfies the stringent requirements of 42 U.S.C. § 1396p(d)(4)(A).

[2] As explained more fully below, Davey (formerly "Andrea Rodgers") is not a party to this appeal.

2

law, to establish breach of fiduciary or legal duties. Without explaining its rationale, the trial court granted summary judgment to McMenamin, Dussault, and Wells Fargo. Anderson now appeals, arguing that (1) the Trustees' Accounting Act does not apply to her trust and does not bar her claims, (2) neither res judicata nor judicial estoppel bar her claims, (3) the terms of the trust do not bar her claims, and (4) she presented enough evidence concerning the disbursements in question to warrant surviving summary judgment in light of disputed material facts.[3] Because the Trustees' Accounting Act bars Anderson's claims, we affirm.

FACTS

BACKGROUND

In November 1996, shortly after her sixth birthday, Anderson (formerly "Rachel M. Rodgers") was kicked in the face by a horse. Anderson "sustained major skull and facial damage" from the injury, required extensive surgery, and suffered substantial "psychological and emotional impact." 3 Clerk's Papers (CP) at 477. Anderson's family hired attorney McMenamin to settle her case and to that end, McMenamin retained attorney Dussault to prepare a trust in which to place the settlement proceeds. The trust was designed to "supplement all other financial and service benefits to which [Anderson] might be eligible as a result of her disability." 3 CP at 478.

---

[3] On May 4, 2012, the trial court entered an order decreeing that Anderson's "claims are dismissed in their entirety with prejudice." Clerk's Papers (CP) at 512. Although Anderson characterizes the dismissal of claims against the defendants other than McMenamin, Dussault, and Wells Fargo—especially the dismissal of her claims against Davey—as "an error potentially needing to be corrected *nunc pro tunc*," the dismissal order itself appears clear on its face. Reply Br. of Appellant at 32. The order distinguishes "[t]hose defendants defending separately, Dussault, Wells Fargo and McMenamin" and awards them attorney fees; moreover, the order's caption states that it is a "Judgment for All Defendants." CP at 512. Anderson has not appealed the dismissal order.

3

On August 25, 1997, Clallam County Superior Court approved the settlement agreement and the parties' creation of the "Rachel Marguerite Rodgers Trust."[4] The trust agreement made Wells Fargo the trustee and established a trust advisory committee ("TAC"), consisting of McMenamin and Davey. The agreement gave the TAC "absolute and unfettered discretion to determine when and if [Anderson] needs regular and extra supportive services." 3 CP at 482.

The explicit language of the trust agreement explained that the trust was designed to

provide extra and supplemental medical, health, and nursing care, dental care, developmental services, support, maintenance, education, rehabilitation, therapies, devices, recreation, social opportunities, assistive devices, advocacy, legal services, respite care, personal attendant care, income and other tax liabilities, and consultant services for [Anderson]. To this end, the [TAC] may provide such resources and experiences as will contribute to and make the beneficiary's life as pleasant, comfortable and happy as feasible. Nothing herein shall preclude the [TAC] from purchasing those services and items which promote the beneficiary's happiness, welfare and development, including but not limited to vacation and recreation trips away from places of residence, expenses for a traveling companion if requested or necessary, entertainment expenses, and transportation costs.

3 CP at 481-82. The agreement also provided that the "Trustee shall make an annual statement of transactions and assets concerning all financial and investment activity undertaken on behalf of the Trust" to be delivered to Anderson, any court-appointed representative of Anderson, and the members of the TAC. 3 CP at 493.

---

[4] Special Proceedings Rule (SPR) 98.16W normally governs approval of settlements involving minors. Anderson does not argue that the parties failed to follow the procedures of SPR 98.16W and, accordingly, we do not further address this issue.

The trust was initially funded with settlement proceeds amounting to $187,160.66.[5] Wells Fargo hired Dussault to prepare its annual reports for court approval. Dussault filed his first report to the court on January 25, 2000. The first report detailed all investment activities and trust disbursements between the trust's establishment date (August 25, 1997) and August 31, 1999. Among other expenses, the report stated that trust funds were used for "vehicle expenses in the total of $14,159.98" including the "purchase of a 1997 Mercury Tracer." 2 CP at 351. The superior court approved the report in its entirety. Dussault submitted the second report on February 12, 2001, which covered "all financial activity" from September 1, 1999 through August 31, 2000. 2 CP at 356. This report stated that "[d]isbursements from the Trust were in the total amount of $41,461.86" and included the "purchase of real estate." 2 CP at 356. The superior court also approved this report in its entirety.

On August 27, 2001, attorney Carl Gay (who represents Anderson in the current matter) sent a letter to Davey, Dussault, Wells Fargo, and McMenamin. The letter stated, in part,

> This letter will advise that I represent Ken Chace III and Janet Gesualdi, respectively the biological father and maternal grandmother of [Anderson]. At their request, I have recently had the opportunity to review the court file in the referenced matter. Based upon a review of recent accountings filed with the court, my clients are concerned that [Anderson]'s trust funds have not been fully and properly invested and it would appear numerous disbursements of trust funds have been made in violation of the letter and spirit of the trust agreement. Improper distributions include use of trust funds to purchase real estate which purportedly is not held in the name of the trust, purchase of a vehicle (and payment of related expenses), and use of trust monies to discharge certain parental financial obligations which are the responsibility of [Anderson]'s mother.

---

[5] The negotiated settlement was for $300,000. The funded amount constituted the remainder of the settlement after court-approved "costs, liens, subrogations, parents' claims, and attorney's fees." 3 CP at 476. According to the chart of Anderson's own expert, as of August 2007, before the trust started paying for Anderson's "post secondary education," the trust had a market value of $197,045.28. 1 CP at 26.

2 CP at 360. The letter further stated that "[i]n the event these issues are not resolved to the satisfaction of my clients, they are prepared to file a petition to intervene in this matter and seek a more focused judicial scrutiny of the trustees' actions." 2 CP at 361.

Dussault responded to Gay's letter on September 6. He told Gay that the trust was "currently resolving" the issue of the "purchase of an interest in a residence" and that he would "provide you and your clients with additional information concerning the trust's interest in the real property in the near future."[6] 2 CP at 362. Dussault also pointed out that "[o]ther expense[s] were incurred for travel expenses specifically for [Anderson]'s doctors' appointments and for purchase of a computer and software for her." 2 CP at 362. Gay did not respond to this letter.

On February 7, 2002, Dussault again wrote Gay explaining that he was "ready to present for approval the September 1, 2000 through August 31, 2001 Annual Report" to the superior court. 2 CP at 364. Dussault included a copy of the proposed report for Gay to examine. Gay responded five days later expressing concerns over (1) the purchase of real property; (2) reimbursement of "funds for expenses which would otherwise be considered the financial support obligation of the custodial parent," including computer costs, vehicle costs, and funds related to birthday presents; (3) certain attorney fees; and (4) trustees' fees. 2 CP at 366. Dussault delayed presenting the report for court approval while he "attempted to address Mr. Gay's concerns." 2 CP at 347. In July of 2002, McMenamin resigned from his voluntary

---

[6] The trust later established its 31 percent interest in the real estate in question by statutory warranty deed. The home was sold in 2005 and, at that time, the Trust received $49,135, a net profit after closing costs of 26 percent.

position as a member of the TAC "when it became apparent that there were ongoing problems with the disgruntled non-custodian parent ([Anderson's] father)." 2 CP at 288.

On December 6, 2002, Dussault submitted a two-year report for approval by the superior court. The report covered all financial activity undertaken by the trust between September 2000 and August 2002. The report noted that the "members of the TAC wish to dissolve the TAC and have the trustee assume all the functions designated to [the] TAC pursuant to the terms of the Trust." 2 CP at 372. The parties, including Gay, were notified that the trial court would hold a hearing related to the trustee report on July 11, 2003. Neither Gay nor his clients, Anderson's father and grandmother, appeared at the hearing. At the hearing, after "having heard the presentation of counsel, [and] having considered the files and records" related to the report, the superior court approved Dussault's report. 2 CP at 375. Additionally, the superior court dissolved the TAC and assigned Wells Fargo as the trustee "to carry out all of the duties of the TAC under the terms of the Trust Agreement." 2 CP at 375. The trial court's approval of the report was not appealed.

From December 23, 2003 to December 4, 2009, the trial court approved four additional reports, none of which were objected to by any interested party. The last such report was approved by the superior court on December 4, 2009, when Anderson was 19 years old. The superior court requested that the next report be filed toward the end of 2011.

PROCEDURE

On July 22, 2011, a few days before her 21st birthday, Gay (now acting on Anderson's behalf) filed a complaint against Davey, McMenamin, Dussault, Wells Fargo, and others alleging "[t]he defendants, and each of them, failed to discharge their fiduciary and other legal duties to [Anderson] as the beneficiary of the trust." 3 CP at 474. Gay attached a letter from R. Duane

7

Wolfe, a certified public accountant, to the complaint. Wolfe's letter stated that in his opinion, Anderson's trust should be reimbursed for (1) the cost of a vehicle purchased by the trust and used by Davey to drive Anderson to doctor's appointments, (2) costs associated with computer related expenses, (3) lost rental income from a house the trust purchased a partial interest in (where Anderson and Davey resided at one point), (4) $1,500 in reimbursements paid to Davey, and (5) certain trustee and legal fees. With interest, Wolfe estimated that $56,873 should be restored to the trust.

McMenamin, Dussault, and Wells Fargo all brought motions for summary judgment. McMenamin argued that Anderson's claims were barred by the Trustees' Accounting Act,[7] res judicata, judicial estoppel, and the doctrine of judicial immunity. McMenamin also argued that if Anderson's claims were not barred, he acted in accord with the trust's express terms and, accordingly, Anderson could not establish breach of legal or fiduciary duties. Dussault argued that as the attorney hired by Wells Fargo solely to prepare annual reports for court approval, he had no legal or fiduciary duties to Anderson. Alternatively, Dussault argued that the Trustees' Accounting Act, res judicata, and judicial estoppel barred Anderson's claims. Wells Fargo argued that Anderson could not establish breach of fiduciary duties because it acted in accord with the trust's express terms. Wells Fargo also argued that the Trustees' Accounting Act and res judicata barred Anderson's claims.

---

[7] The Trustees' Accounting Act, discussed more fully below, requires that after a court has either approved or disapproved of a submitted trust accounting, that decree is subject only to a right of appeal and when the time to appeal expires, the accounting becomes "'final, conclusive, and binding' on all interested parties, even 'incompetent, unborn, and unascertained beneficiaries.'" *Barovic v. Pemberton*, 128 Wn. App. 196, 201, 114 P.3d 1230 (2005) (quoting RCW 11.106.080)).

In response to the summary judgment motions, Gay submitted declarations from Anderson, her father, and her maternal grandmother, all alleging that Davey periodically committed fraud in obtaining reimbursements from the trust.[8] Gay also submitted a declaration from an attorney opining on the standard of care owed by an "attorney representing a trustee for a minor beneficiary." 1 CP at 141. In addition, Gay argued in his reply brief that

> [t]his case presents factual disputes whether disbursements from [Anderson]'s trust fund benefitted [her], not [Davey] or others, in accordance with the trust agreement. There are factual disputes whether [Davey] and Mr. McMenamin fulfilled their fiduciary roles, as members of the [TAC], in ensuring [Anderson]'s trust funds were disbursed in accordance with the trust agreement or whether they were negligent in allowing those expenditures. There are factual disputes whether Wells Fargo Bank and its legal counsel fulfilled their fiduciary and legal duties, as trustee and lawyers, in ensuring [Anderson]'s trust funds were disbursed in accordance with the trust agreement. There are factual disputes whether [Anderson] has suffered a financial loss as a consequence of those duties being breached.

1 CP at 88. Gay also argued that the Trustees' Accounting Act did not apply to the trust, and that res judicata and judicial estoppel did not bar the claims.

On March 1, 2012, after considering the parties' briefing, declarations, other evidence, and oral argument, the trial court granted summary judgment to Wells Fargo, McMenamin, and Dussault. Anderson appeals the order granting summary judgment.

## DISCUSSION

STANDARD OF REVIEW

We review a trial court's summary judgments de novo. *Torgerson v. One Lincoln Tower, LLC*, 166 Wn.2d 510, 517, 210 P.3d 318 (2009). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine

---

[8] Anderson never amended her complaint to allege fraud as required by CR 9(b).

9

issues of material fact, and the moving party is entitled to judgment as a matter of law. CR 56(c). A material fact is one on which the outcome of the litigation depends in whole or in part. *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990).

In a summary judgment motion, the moving party bears the initial burden of showing the absence of an issue of material fact. *See, e.g., LaPlante v. State*, 85 Wn.2d 154, 158, 531 P.2d 299 (1975). "If the moving party is a defendant and meets this initial showing, then the inquiry shifts to the party with the burden of proof at trial, the plaintiff. If, at this point, the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' then the trial court should grant the motion." *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989) (footnote omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). The nonmoving party may not rest upon mere allegations or denials during this burden shifting process. *Hiatt v. Walker Chevrolet Co.*, 120 Wn.2d 57, 66, 837 P.2d 618 (1992). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. In addition, we interpret statutes de novo. *Port of Seattle v. Pollution Control Hearings Bd.*, 151 Wn.2d 568, 587, 90 P.3d 659 (2004).

TRUSTEES' ACCOUNTING ACT

Wells Fargo, Dussault, and McMenamin all argue that Washington's Trustees' Accounting Act bars Anderson's claims and, accordingly, the trial court's summary judgment should be affirmed. Because the Trustees' Accounting Act applies to Anderson's "special

"needs" trust, we agree. Moreover, because this issue is dispositive, we do not address Anderson's remaining arguments.

Under ch. 11.106 RCW, Washington's Trustees' Accounting Act, a trustee like Wells Fargo may

> file in the superior court of the county in which the trustees or one of the trustees resides an intermediate account under oath showing:
> (1) The period covered by the account;
> (2) The total principal with which the trustee is chargeable according to the last preceding account or the inventory if there is no preceding account;
> (3) An itemized statement of all principal funds received and disbursed during such period;
> (4) An itemized statement of all income received and disbursed during such period, unless waived;
> (5) The balance of such principal and income remaining at the close of such period and how invested;
> (6) The names and addresses of all living beneficiaries, including contingent beneficiaries, of the trust, and a statement as to any such beneficiary known to be under legal disability;
> (7) A description of any possible unborn or unascertained beneficiary and his or her interest in the trust fund.
> After the time for termination of the trust has arrived, the trustee or trustees may also file a final account in similar manner.

RCW 11.106.030.

If a trustee has filed such an intermediate accounting, the Act requires the superior court to determine the validity and accuracy of the accounting:

> Upon the return date or at some later date fixed by the court if so requested by one or more of the parties, the court without the intervention of a jury and after hearing all the evidence submitted shall determine the correctness of the account and the validity and propriety of all actions of the trustee or trustees set forth in the account including the purchase, retention, and disposition of any of the property and funds of the trust, and shall render its decree either approving or disapproving the account or any part of it, and surcharging the trustee or trustees for all losses, if any, caused by negligent or wilful breaches of trust.

RCW 11.106.070.

11

And if the superior court enters such a decree, it "shall be deemed final, conclusive, and binding upon all the parties interested *including all incompetent*, unborn, and unascertained beneficiaries of the trust." RCW 11.106.080 (emphasis added). As this court stated in *Barovic v. Pemberton*, 128 Wn. App. 196, 201, 114 P.3d 1230 (2005), "the statutory language is unambiguous." The trial court "must either approve or disapprove the accounting" and must surcharge the trustee for losses caused by negligence or willful breach. *Barovic*, 128 Wn. App. at 201. However, after the trial court's decree is final and the time to appeal expires, a complaining party in interest relinquishes his or her right to recover losses, even losses from willful or negligent breaches of trust.[9] *Barovic*, 128 Wn. App. at 201-02.

Here, Anderson admits that the court-approved report from December 23, 2003—a report filed and approved more than seven years before Anderson brought this lawsuit—involves "the final year of accounting for which [she] now presents a challenge." Reply Br. of Appellant at 12 n.3. She fails to explain why the applicable statutes of limitations should have tolled during the years of her incompetency.[10] Instead, she argues that the Trustees' Accounting Act does not

_____

[9] The Act states that "any party in interest may appeal" the decree rendered under RCW 11.106.070 "as in civil actions to the supreme court or the court of appeals of the state of Washington." RCW 11.106.090.

[10] Indeed, under the plain language of the statute, the statute of limitations would not toll for an incompetent trust beneficiary like Anderson. *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 629, 869 P.2d 1034 (1994) ("[W]here a statute is unambiguous, we will determine the Legislature's intent from the language of the statute alone."). Anderson argues that her "underlying claims against the respondents for breach of legal and fiduciary duties were being quietly tolled under the applicable statutes of limitations" when discussing the doctrine of res judicata. Reply Br. of Appellant at 18. But she provides no citation to authority for this proposition and fails to explain which statutes of limitations are applicable to her claims.

The statutes of limitation for breach of fiduciary duty or legal malpractice claims are both three years. *See* RCW 11.96A.070(1)(a); *Huff v. Roach*, 125 Wn. App. 724, 729, 106 P.3d 268 (citing RCW 4.16.080(3)), *review denied*, 155 Wn.2d 1023 (2005). Anderson appears to be arguing that a claim for breach of fiduciary duty or legal malpractice may be brought outside the

apply to her trust or, alternatively, that "a trial court's approval of a trustees' report is not binding on a minor beneficiary for which a guardian *ad litem* ('GAL') was not appointed." Reply Br. of Appellant at 14. Anderson misinterprets the Act in both instances.

At the time the superior court adjudicated Anderson's claim, the first section of the Act stated, in part, "This chapter does not apply to resulting trusts, constructive trusts [or] trusts created by judgment or decree of a federal court or of the superior court when not sitting in probate."[11] Former RCW 11.106.010 (1985). As the Washington Supreme Court explained nearly 90 years ago,

> [W]here a trust arises by an express contract or agreement between the parties, it is an express trust, and under practically all authorities implied, constructive, and resulting trusts are those which do not arise out of a contract between the parties providing for the trust, but arise by operation of law.

*In Re Weir's Estate*, 134 Wash. 560, 566, 236 P. 285 (1925).

According to Anderson, the Act does not apply to her trust because her trust was created by "judgment or decree" of a superior court when not sitting in probate and, accordingly, is a resulting or constructive trust that has arisen by operation of law. We disagree. This assertion

---

framework of the Trustees' Accounting Act. In her reply brief she argues that her "current lawsuit is not an action seeking to undo the court's serial approvals of Wells Fargo's annual statements prior to [Anderson] becoming an adult." Reply Br. of Appellant at 18. But this contention runs contrary to the purpose of the Act itself: establishing the finality of intermediate, court-approved trust accountings. Anderson has provided no authority for this unpersuasive argument.

[11] During the pendency of this appeal, the legislature removed the phrase "trusts created by judgment or decree of a federal court or of the superior court when not sitting in probate" from RCW 11.106.010. LAWS OF 2013, ch. 272, § 25. Pursuant to section 28(2) of the same legislation, the amended version of RCW 11.106.010 applies only to "judicial proceedings concerning trusts commenced on or after January 1, 2013." LAWS OF 2013, ch. 272, § 28(2). As the superior court decided this case on March 1, 2012, the amended version of the statute is inapplicable to this case and we address the merits of Anderson's claim based on the former version of RCW 11.106.010.

13

mischaracterizes the record. The superior court here did not "create" Anderson's trust by judgment or decree. Instead, it merely approved an *express* trust intentionally created by agreement of the parties to Anderson's original lawsuit.[12] And while no Washington court has previously addressed whether an express "special needs" trust falls within the scope of the Trustees' Accounting Act, Anderson provides no cogent argument for why the Act should not apply to such a trust. We hold that the Act applies.

Alternatively, Anderson argues that because the superior court failed to appoint a guardian ad litem to represent her interests, the court's final decrees approving each report are not binding on her. We disagree; nothing in the Act requires appointment of a guardian ad litem.

RCW 11.106.060 states that when a trustee seeks court approval of an intermediate accounting, "[t]he court shall appoint guardians ad litem as provided in RCW 11.96A.160." Anderson argues that this statute imparts to the trial court a mandatory duty to appoint a guardian ad litem based on the word "shall" in the opening clause of the statute. "We construe the meaning of a statute by reading it in its entirety." *Fed. Way Sch. Dist. No. 210 v. Vinson*, 172 Wn.2d 756, 765, 261 P.3d 145 (2011). A reasonable interpretation of a statute "must, at a minimum, account for all the words in [the] statute." *Five Corners Family Farmers v. State*, 173 Wn.2d 296, 312, 268 P.3d 892 (2011). Accordingly, a reasonable interpretation of RCW

---

[12] Anderson's opening brief characterizes the court's approval of the trust in these same terms: "Respondent Richard McMenamin . . . was hired by [Anderson's] family to pursue a personal injury claim against the owners of the horse and on August 25, 1997 . . . the trial court *approved* a minor's settlement for [Anderson] in the amount of $300,000. CP 286. In conjunction therewith, the court also *approved* the establishment of a special needs trust." Br. of Appellant at 4 (emphasis added). Anderson only argues that the superior court "created" (rather than approved) her "special needs" trust in her reply brief in response to the defendants' claims that the Trustees' Accounting Act bars her claims.

11.106.060 requires determining what RCW 11.96A.160 provides. And contrary to Anderson's assertions of a mandatory duty, RCW 11.96A.160(1) states that

> [t]he court, upon its own motion or upon request of one or more of the parties, at any stage of a judicial proceeding or at any time in a nonjudicial resolution procedure, *may* appoint a guardian ad litem to represent the interests of a minor, incapacitated, unborn, or unascertained person, person whose identity or address is unknown, or a designated class of persons who are not ascertained or are not in being. If not precluded by a conflict of interest, a guardian ad litem *may* be appointed to represent several persons or interests.

(Emphasis added.) Under the plain language of the statute, the trial court has the *discretion* to appoint a guardian ad litem—nothing in the statute (or the Trustees' Accounting Act) makes such an appointment mandatory.

Anderson fails to show how the trial court's final decrees approving each trust report should not be binding on her. Nor has Anderson explained how the judicial oversight of each intermediate accounting submitted to, and approved by, the superior court provided her inadequate notice or protection when she was incompetent to assess the performance of her own trust. We hold that the Trustees' Accounting Act bars Anderson's claims and the trial court properly granted Dussault, Wells Fargo, and McMenamin summary judgment. Moreover, because this issue is dispositive, we do not address the parties' other claims. We affirm the trial court.

ATTORNEY FEES

Dussault and Wells Fargo both request reasonable costs and attorney fees pursuant to RAP 18.1 and the Washington Trust and Estate Dispute Resolution Act ("TEDRA"), ch. 11.96A RCW. TEDRA provides,

> Either the superior court or any court on appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the

proceedings . . . to be paid in such amount and in such manner as the court determines to be equitable. In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved.

RCW 11.96A.150(1).

As Anderson's claims against Dussault and Wells Fargo lack merit, we grant their request for costs and attorney fees in an amount to be determined by our commissioner. RAP 18.1(f).

QUINN-BRINTNALL, J.

We concur:

JOHANSON, A.C.J.

DALTON, J.P.T.