# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

REED TAYLOR,

        Appellant,

v.

SCOTT BELL and JANE DOE BELL, and their marital community; FRANK TAYLOR and JANE DOE TAYLOR, and their marital community; CAIRNCROSS & HEMPELMANN, a Professional Service Corporation,

        Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

DIVISION ONE

No. 70414-1-I

PUBLISHED OPINION

FILED: December 29, 2014

DWYER, J. — Before the doctrine of judicial estoppel may be applied, a party's initial position—which is subsequently contradicted in a different proceeding—must be accepted by the court to which it is presented. In a proceeding prior to the matter before us on appeal, appellant Reed Taylor's initial position was rejected by the court to which it was presented. Nevertheless, in this matter, the King County Superior Court applied judicial estoppel, found insufficient evidence of proximate causation, and granted summary judgment in favor of the respondents. Given that Taylor[1] did not successfully maintain his position in the prior proceeding, and because sufficient evidence of proximate causation was presented with regard to Taylor's claims of legal malpractice and

_____

[1] For clarity, we will refer to plaintiff-appellant Reed Taylor as "Taylor." We will refer to defendant-respondent Frank Taylor as "Frank Taylor."

breach of fiduciary duty, we reverse the trial court's grant of summary judgment as to those claims and remand for further proceedings.

I

Reed Taylor was the founder and chief executive officer of AIA Services Corporation, an Idaho corporation. In 1995, Taylor was also the majority shareholder. At that time, certain shareholders solicited Taylor to sell his majority stake back to AIA through a stock repurchase. At the time, both he and AIA were represented by various lawyers from the Idaho law firm of Eberle Berlin Kading Turnbow & McKlveen (collectively Eberle). Eberle had an extensive history of representing Taylor and AIA.[2]

On March 7, 1995, AIA held a board and shareholder meeting to discuss the plan to repurchase Taylor's shares. At this meeting, the shareholders authorized the repurchase of Taylor's shares. However, the shareholders did not authorize the use of capital surplus to repurchase Taylor's shares. During the same meeting, the board of directors advised Taylor to obtain independent legal counsel.

Taylor was referred to Cairncross & Hempelmann (collectively Cairncross)—a Seattle law firm. Attorneys from Cairncross[3] began representing Taylor in March of 1995. The firm did not have an office in Idaho and the attorneys representing Taylor were not licensed to practice law in Idaho. The fee

---

[2] Eberle regularly served as AIA's legal representative. In addition, Taylor's personal attorney, Richard Riley, was an attorney at Eberle.

[3] Two Cairncross attorneys, Scott Bell and Frank Taylor, were named as defendants in this lawsuit.

agreement indicated that Cairncross would represent Taylor "in the matter of the sale of his stock in AIA."

Cairncross negotiated and drafted the stock redemption agreement and ancillary agreements. During this period of time, Cairncross attorney Frank Taylor wrote the following to a colleague: "What about: (1) The issue of their authority to enter into the Stock Redemption Agreement—Riley's proposal says Co.'s authority to do this and to close & consummate the transaction is dependent upon . . . SH approval . . . ." When Cairncross billed Taylor for the work that it had done in connection with the stock redemption agreement, its billing records included the following descriptions: "Analysis re need for shareholder meeting," and "Analysis re corporate authority issues."

As part of the deal brokered by Cairncross, AIA was required to deliver certain documents to Cairncross at closing. Additionally, Eberle was obligated to deliver to Taylor a third party closing opinion letter. This opinion letter, the content of which was negotiated by Cairncross and Eberle, was addressed to Taylor and stated that only he could rely upon it. The letter provided, in pertinent part, that "the consummation of the transactions contemplated thereby, will" not "(c) to the best of our knowledge, violate any law . . . of any jurisdiction to which [AIA] . . . [is] subject."

The final terms of the agreement provided that AIA would redeem all of Taylor's AIA shares in exchange for (1) a down payment of $1,500,000, (2) a $6 million promissory note, with interest-only payments for 10 years and the principal due in a balloon payment in the final year, (3) forgiveness of certain

debt owed by Taylor and related entities to AIA, and (4) transfer of title of several airplanes to Taylor.

Within the following year, AIA defaulted on its obligations pursuant to the agreement. Cairncross represented Taylor in restructuring the obligations. After the restructure, Cairncross ceased to represent Taylor.

*Taylor Sues AIA in Idaho*

In 2007, AIA again failed to meet its obligations to Taylor. In response, Taylor sued AIA, including certain officers and directors, in Idaho state court.

In 2008, certain defendants moved for partial summary judgment, arguing that the stock redemption agreement violated an Idaho statute that had been in effect at the time that the stock redemption transaction closed—former IDAHO CODE ANN. § 30-1-6 (1995).[4] That statute, which has since been repealed, authorized corporations to purchase their own shares, but instituted restrictions on the source of funds that could be used for that purpose.

On June 17, 2009, the Idaho trial court ruled that the redemption agreement had been in violation of former IDAHO CODE ANN. § 30-1-6 and, thus, was unenforceable. Specifically, the court held that because AIA had not had earned surplus at the time of the redemption agreement, and because it had not been authorized by either its governing documents or by a majority shareholder

---

[4] This statute provided, in pertinent part, the following:
> A corporation shall have the right to purchase . . . its own shares, but purchases of its own shares, whether direct or indirect, shall be made only to the extent of unreserved and unrestricted earned surplus available therefor, and, if the articles of incorporation so permit or with the affirmative vote of the holders of a majority of all shares entitled to vote thereon, to the extent of unreserved and unrestricted capital surplus available therefor.

Former IDAHO CODE ANN. § 30-1-6 (1995).

- 4 -

vote to use capital surplus in order to fund the redemption, the redemption agreement was in violation of former IDAHO CODE ANN. § 30-1-6. In so ruling, the Idaho trial court noted that Taylor "was represented by counsel" and that "[t]here is no question that all parties, including [Taylor], either ignored or failed to consider [IDAHO CODE ANN.] § 30-1-6."

The Idaho Supreme Court affirmed the trial court's decision. Taylor v. AIA Servs. Corp., 151 Idaho 552, 261 P.3d 829 (2011).

*Taylor Sues Eberle in Idaho*

In October 2009, following the adverse ruling by the trial court in his lawsuit against AIA, Taylor filed suit against Eberle in Idaho state court. He pleaded claims of negligent misrepresentation, fraud, breach of fiduciary duty, legal malpractice, and violation of the Idaho Consumer Protection Act.[5]

Eberle moved for summary judgment. Therein, it maintained that because it had not had an attorney-client relationship with Taylor, it had owed him no duty of care.

Taylor opposed Eberle's motion. In the course of so doing, he testified that he had relied on Eberle to provide the legal representation that was necessary for his shares to be properly redeemed.

> I relied upon [Eberle] to provide the legal representation necessary to legally and properly complete the redemption of my shares for me and AIA Services. Neither I nor AIA Services had any other attorneys retained for the purpose of providing the legal representation to ensure the redemption of my shares had all necessary consents and did not violate any laws.

---

[5] IDAHO CODE ANN. § 48-601 to -619.

On May 7, 2010, the Idaho trial court ruled that, although Eberle owed Taylor a duty in connection with the drafting and issuance of the opinion letter, its duty did not arise as a result of an attorney-client relationship. Consequently, those of Taylor's claims that were predicated upon the existence of an attorney-client relationship with Eberle were dismissed. However, the rest of his claims were allowed to proceed. Eberle's motion for reconsideration was denied, and it appealed to the Idaho Supreme Court.

In August 2014, the Idaho Supreme Court affirmed. In upholding the trial court's ruling that Taylor was owed a duty by Eberle as a non-client, the Idaho Supreme Court identified that which was the target of Taylor's claim: "Mr. Taylor's cause of action is not to recover damages based upon the stock redemption agreement. It is to recover damages based upon the issuance of the opinion letter that failed to mention that the transaction did not comply with Idaho Code section 30-1-6." Taylor v. Riley, 157 Idaho 323, 336 P.3d 256, 262 (2014).

*Taylor Sues Cairncross in Washington*

In March 2012, Taylor filed suit against Cairncross in King County Superior Court. His claims included legal malpractice, breach of fiduciary duty, and violation of the Washington Consumer Protection Act (CPA).[6]

In February 2013, Cairncross moved for summary judgment.[7] Therein, Cairncross argued, inter alia, that the doctrine of judicial estoppel precluded

---

[6] Ch. 19.86 RCW.

[7] After Cairncross filed its summary judgment motion, Taylor moved to amend and supplement his complaint in order to include new causes of action—(1) violation of Idaho's Consumer Protection Act; (2) declaratory relief; and (3) equitable estoppel. His motion was denied.

Taylor from maintaining his claims, that Taylor had failed to carry his burden on the element of proximate causation, and that Cairncross and Taylor had limited the scope of Cairncross's representation to exclude matters relating to AIA's authority and the enforceability of the transaction under Idaho law.

Taylor opposed the motion and filed a cross-motion for partial summary judgment. Therewith, by declaration, Taylor submitted expert testimony from Professor Richard McDermott.

Subsequently, the trial court orally granted Cairncross's motion for summary judgment, denied Taylor's cross motion, and—thereafter—memorialized its ruling in a written order.[8] In dismissing Taylor's claims for malpractice, breach of fiduciary duty, and violations of the CPA, the trial court held that (1) judicial estoppel barred Taylor's claims of malpractice and breach of fiduciary duty, (2) Taylor had offered no admissible evidence to show proximate causation as to his claims for malpractice and breach of fiduciary duty, and (3) Taylor's CPA claim failed as a matter of law.

Regarding judicial estoppel, the trial court found that Taylor had taken inconsistent positions in Idaho and in Washington.

> Basically, what the plaintiff did in Idaho is he pointed the finger at [Eberle] and said: These are the Idaho lawyers who were representing me. I mean, he didn't say they were representing some third party . . . , he said, "They were representing me," and that no

---

[8] In its proposed order, Cairncross included a proposed finding that the Idaho trial court had been misled. In response, Taylor offered expert testimony from Washington attorney Gary Libey, and a supplemental declaration from Taylor's counsel. These submissions were meant to refute the notion that the Idaho trial court had been misled. In the King County judge's written order memorializing that court's oral grant of summary judgment, the judge expressly declined to consider the supplemental declarations offered by Taylor.

other lawyer, specifically [Cairncross] – no other lawyer was involved. In other words, no other lawyer had a duty. This was done in Idaho so that he could pursue liability against those Idaho lawyers.

Now he says, "No, that's not true, I didn't mean that, and Cairncross were the other lawyers." It is a direct and irreconcilable conflict stated under oath, inconsistent with the course of dealing and all the other evidence under oath that was submitted.

Yes, Cairncross was not licensed to practice law in the state of Idaho – everybody concedes that – and that's the reason they went out and got the [Eberle] opinion letter. That's why it was abundantly clear . . . why the plaintiff had to do that, and that's why that opinion letter, that Idaho representation was clearly beyond the scope of their representation here in Washington.

Next, independent of its ruling with regard to judicial estoppel, the trial court ruled that Taylor had not offered evidence of a sufficient quantum as to the element of proximate causation, rendering Taylor's claims of malpractice and breach of fiduciary duty subject to summary judgment. In so concluding, the trial court refused to consider the testimony of McDermott offered by Taylor.

This relates, then, to the proximate causation issue, because under Washington law, I don't think there's any admissible evidence that there is proximate causation. There is just no admissible evidence under Washington law, because Mr. McDermott doesn't have the requisite expertise for us to admit his declaration as admissible evidence. He is qualified to opine under Idaho law, perhaps New York law, but there's no admissible evidence under Washington law for the admissibility of his opinion. It's a different question about whether it's admissible under Idaho law.

However, the trial court did not reach the issue of whether Washington law or Idaho law should apply.

To the extent Washington law applies, there is no proximate causation, leaving open the question of—again, independent of any judicial estoppel analysis, I'm going to grant partial summary judgment. To the extent that Washington substantive law applies on the malpractice claim, there is no proximate causation.

If Idaho law were to—substantive law were to apply, I think I

- 8 -

do not have sufficient information to make that decision, and that may be a matter for another day.[9]

The trial court further concluded that Taylor's CPA claim failed as a matter of law.

Taylor's motion for reconsideration was denied.

Taylor appeals from the dismissal of his claims for malpractice and breach of fiduciary duty.[10]

II

Taylor contends that summary judgment, insofar as it rested upon application of the doctrine of judicial estoppel, was erroneously granted. We agree. Even assuming, without deciding, that Cairncross's characterization of Taylor's litigation theory in Idaho is accurate, we conclude that this theory was not accepted in that proceeding. Consequently, the trial court's grant of summary judgment was based upon a mistaken application of judicial estoppel.[11]

---

[9] In its written order, the trial court further explained its ruling with regard to the choice of law issue:

2. Proximate Cause: The Court reaches no conclusion as to whether Washington or Idaho substantive law governs Plaintiff's claims for legal malpractice and breach of fiduciary duty.

If Washington substantive law governs, then Plaintiff's claims for legal malpractice and breach of fiduciary duty fail as a matter of law for lack of proximate causation, in which case Defendants' motion for summary judgment is GRANTED as to Plaintiff's claims for legal malpractice and breach of fiduciary duty, and those claims are hereby DISMISSED WITH PREJUDICE.

If Idaho substantive law governs, the Court presently lacks sufficient information to determine whether Plaintiff's claims for legal malpractice and breach of fiduciary duty fail for lack of proximate causation under Idaho law, and the Court therefore reaches no conclusion on the subject.

[10] He does not appeal from the dismissal of his CPA claim.

[11] Taylor argues that Cairncross either waived the defense of judicial estoppel by failing to raise it in its responsive pleading or was precluded from availing itself of the defense because of its "unclean hands." We disagree.

"Summary judgment orders are reviewed de novo." Overton v. Consol. Ins. Co., 145 Wn.2d 417, 429, 38 P.3d 322 (2002). Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). All evidence, however, must be viewed in the light most favorable to the nonmoving party. Overton, 145 Wn.2d at 429.

"'Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.'" Arkison v. Ethan Allen, Inc., 160 Wn.2d 535, 538, 160 P.3d 13 (2007) (quoting Bartley-Williams v. Kendall, 134 Wn. App. 95, 98, 138 P.3d 1103 (2006)); accord Anderson v. Dussault, __ Wn.2d __, 333 P.3d 395, 401 (2014). "There are two primary purposes behind the doctrine: preservation of respect for judicial proceedings and avoidance of inconsistency, duplicity, and waste of time." Anfinson v. FedEx Ground Package Sys., Inc., 174 Wn.2d 851, 861, 281 P.3d 289 (2012); accord Harris v. Fortin, __ Wn. App. __, 333 P.3d 556, 558 (2014).

---

Judicial estoppel is designed to protect the judicial system. Anfinson v. FedEx Ground Package Sys., Inc., 174 Wn.2d 851, 861, 281 P.3d 289 (2012). As it is primarily a means of shielding the judicial system, the doctrine—which may be invoked by a court at its discretion—is not subjected to the same strictures imposed upon equitable defenses that were implemented primarily with litigants in mind. See, e.g., In re Richardson, 497 B.R. 546, 558 (Bankr. S.D. Ind. 2013) ("Even when one party's hands are unclean, another party's inconsistent positions may threaten judicial integrity."). Nor is the court's discretion dependent upon pleading niceties.

Three "core," nonexhaustive[12] factors guide a trial court's determination of whether to apply judicial estoppel: (1) whether the party's later position is clearly inconsistent with its earlier position, (2) whether acceptance of the later inconsistent position would create the perception that either the first or the second court was misled, and (3) whether the assertion of the inconsistent position would create an unfair advantage for the asserting party or an unfair detriment to the opposing party. Anfinson, 174 Wn.2d at 861.

While these factors are inevitably recited and often applied by Washington appellate courts, there is a consensus among the courts of appeal that judicial estoppel may be applied only in the event that a litigant's prior inconsistent position benefited the litigant or was accepted by the court. See Cunningham v. Reliable Concrete Pumping, Inc., 126 Wn. App. 222, 230-31, 108 P.3d 147 (2005) (Division One), DeVeny v. Hadaller, 139 Wn. App. 605, 620-22, 161 P.3d 1059 (2007) (Division Two), and Johnson v. Si-Cor, Inc., 107 Wn. App. 902, 909, 28 P.3d 832 (2001) (Division Three); accord Lee ex rel. Office of Grant County Prosecuting Attorney v. Jasman, __ Wn. App. __, 332 P.3d 1106, 1126 (2014) (Division Three) ("To find that a party to be estopped has successfully maintained a claim or position requires that the first court adopt the claim or position, either as a preliminary matter or as part of a final disposition."); see also Milgard Tempering, Inc. v. Selas Corp. of Am., 902 F.2d 703, 716 (9th Cir. 1990) ("The

---

[12] While our Supreme Court has explained that these factors are not exhaustive, it has not, contrary to Taylor's assertion, mandated consideration of other factors. See Arkison, 160 Wn.2d at 539 ("These factors are not an 'exhaustive formula' and '[a]dditional considerations' may guide a court's decision." (alteration in original) (quoting New Hampshire v. Maine, 532 U.S. 742, 751, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001))).

majority view is that the doctrine is inapplicable unless the inconsistent assertion was actually adopted by the court in the prior litigation." (citing <u>Stevens Tech. Servs. v. SS Brooklyn</u>, 885 F.2d 584, 589 (9th Cir. 1989) (collecting federal cases))).[13]

In this matter, the trial court concluded that there was a "direct and irreconcilable conflict" between the positions taken by Taylor in Idaho and in Washington. There is some dispute by the parties concerning the position that was taken by Taylor in Idaho. Taylor argues that, in Idaho and in Washington, his theory was and continues to be that both Eberle and Cairncross provided him with legal representation. Cairncross proposes a different understanding, arguing that Taylor's theory in Idaho, as evidenced by his testimony in that proceeding, was that Eberle was his only legal representative retained "to ensure the redemption of [his] shares had all necessary consents and did not violate any laws."

Resolution of this issue is not predicated upon an initial determination of Taylor's true position advanced in Idaho.[14] Taylor's position need not be determined definitively because, even assuming, without deciding, that the

---

[13] When reviewing a summary judgment where the moving party invoked judicial estoppel to persuade a court to bar a claim, we have said that the proper standard of review is abuse of discretion. <u>See, e.g.</u>, <u>Harris</u>, 333 P.3d at 558-59. Yet, it is well settled that summary judgment orders and all rulings made in conjunction with summary judgment are reviewed de novo. <u>Momah v. Bharti</u>, 144 Wn. App. 731, 749, 182 P.3d 455 (2008) (citing <u>Folsom v. Burger King</u>, 135 Wn.2d 658, 663, 958 P.2d 301 (1998)).

Given that Taylor appeals from an order granting summary judgment that was based, in part, on the application of judicial estoppel, the proper standard for reviewing the trial court's order is not self-evident. However, because we conclude that, under either standard of review, the challenged ruling was erroneous, we need not resolve the conflict noted.

[14] Yet, insofar as Cairncross asserts that Taylor's theory was that Eberle represented "his only potential source of recovery," Br. of Respondents at 25-26, we conclude that Cairncross is incorrect.

manner in which Cairncross has characterized Taylor's theory in Idaho is correct, it was undoubtedly rejected by the Idaho trial court. In restricting to that of a non-client the duty that was owed to Taylor by Eberle, the Idaho court necessarily repudiated the notion—whether or not advanced by Taylor—that Eberle had been Taylor's *only* legal representative in ensuring that the stock redemption was enforceable under Idaho law and that AIA had the authority to enter into the transaction. After all, exclusive legal representation presupposes the existence of an actual attorney-client relationship. The Idaho trial court ruled that Taylor enjoyed no such relationship with Eberle.

Acceptance of an initial position is a precondition to the application of judicial estoppel. The Idaho trial court did not give credence to the theory that Eberle had been representing Taylor in the matter of his stock redemption, let alone to the exclusion of any other legal representative.[15] Hence, the trial court erred in basing summary judgment on the application of the doctrine of judicial estoppel.

III

Cairncross contends that, even in the event that the trial court erred by applying judicial estoppel, it did not err when it ruled that, with regard to the element of proximate causation—an essential element of Taylor's claims for malpractice and breach of fiduciary duty—insufficient evidence was offered to

---

[15] The Idaho Supreme Court's subsequent decision is not at variance with the trial court's analysis. Taylor, 336 P.3d at 268 ("The claim against the Estate and [Eberle] in this case is not based upon [the] representation [by Eberle] of any party in prior litigation . . . . It is based solely upon [the] issuance of the opinion letter.").

- 13 -

survive summary judgment. We disagree. McDermott's expert testimony, which was erroneously excluded by the trial court, provides a sufficient quantum of evidence for Taylor's claims of malpractice and breach of fiduciary duty to withstand summary adjudication.[16]

While ordinarily our review of evidentiary rulings made by the trial court is for abuse of discretion, we review de novo such rulings when they are made in conjunction with a summary judgment motion. Wilkinson v. Chiwawa Communities Ass'n, 180 Wn.2d 241, 249, 327 P.3d 614 (2014). Hence, we do not defer to a trial court's determination regarding the qualifications of an expert witness when made for purposes of summary judgment. Seybold v. Neu, 105 Wn. App. 666, 678, 19 P.3d 1068 (2001).

"Generally, expert testimony is admissible if (1) the expert is qualified, (2) the expert relies on generally accepted theories in the scientific community, and (3) the testimony would be helpful to the trier of fact." Johnston-Forbes v. Matsunaga, 181 Wn.2d 346, 352, 333 P.3d 388 (2014). "[A] lawyer not admitted to the Washington bar is not, per se, unqualified as an expert witness in a legal malpractice action in this state." Walker v. Bangs, 92 Wn.2d 854, 858-59, 601 P.2d 1279 (1979) (holding that the fact that the expert witness was not licensed to practice in Washington should go to the weight, rather than the admissibility, of his testimony, assuming that the witness is otherwise qualified); accord

---

[16] The parties dispute whether Idaho or Washington law applies. The trial court based its decision to grant summary judgment on the assumption that Washington law applies. It specifically declined to reach this issue in the event that Idaho law applied. Therefore, in reviewing the trial court's order, we apply Washington law.

Johnston-Forbes, 181 Wn.2d at 355 ("Licensure may be relevant to a trial judge in deciding admissibility of expert testimony, but lack of a license does not, in all cases, require exclusion."); Channel v. Mills, 77 Wn. App. 268, 282-83, 890 P.2d 535 (1995) ("It is error . . . to exclude the testimony of an expert *solely* because he or she is not licensed in this state."). It is beyond cavil that "an expert may be qualified" to testify "by experience alone." In re Marriage of Katare, 175 Wn.2d 23, 38, 283 P.3d 546 (2012) (citing ER 702); accord State v. Ortiz, 119 Wn.2d 294, 310, 831 P.2d 1060 (1992) ("Practical experience is sufficient to qualify a witness as an expert.")

In excluding McDermott's expert testimony, the trial court misperceived the appropriate inquiry.[17] The trial court should have sought to ascertain whether McDermott was qualified to opine on matters of multi-jurisdictional corporate practice, including third party opinion practice. That was the gist of his testimony and the purpose for which it was offered. Had the trial court considered McDermott's credentials, which were undisputed, they would have revealed, as detailed below, that he is eminently qualified to testify as an expert in this matter.

- He has extensive experience in multi-jurisdictional practice;
- He has been a member of the TriBar Opinion Committee[18] for over 20 years;

---

[17] The record suggests that McDermott's testimony was rejected on the basis that he was not licensed to practice law in Washington.
> There is just no admissible evidence under Washington law, because Mr. McDermott doesn't have the requisite expertise for us to admit his declaration as admissible evidence. He is qualified to opine under Idaho law, perhaps New York law, but there's no admissible evidence under Washington law for the admissibility of his opinion. It's a different question about whether it's admissible under Idaho law.

[18] This well-established and well-regarded organization publishes reports on various aspects of opinion practice.

- He has experience in the preparation or receipt of over 100 third party opinion letters;
- He has over 33 years of experience as a professor of law on corporate finance;
- He is the author of a law school text book on corporate finance;
- He is the author on a chapter in a treatise on opinion letters; and
- He has over 35 years of experience in all aspects of corporate law.

McDermott's testimony contains evidence sufficient to withstand summary judgment on Taylor's claims of malpractice and breach of fiduciary duty. More specifically, as to each claim, aspects of his testimony create genuine issues of material fact regarding the essential element of proximate causation.

Proximate causation has two elements: cause in fact and legal causation. Smith v. Preston Gates Ellis, LLP, 135 Wn. App. 859, 864, 147 P.3d 600 (2006). Cause in fact refers to the "but for" consequences of an act, that is, the immediate connection between an act and an injury. Smith, 135 Wn. App. at 864. Cause in fact is usually the province of the jury. Smith, 135 Wn. App. at 864. However, the court can determine cause in fact as a matter of law if reasonable minds could not differ. Smith, 135 Wn. App. at 864. Legal causation is based on policy considerations determining how far the consequences of an act should extend. Smith, 135 Wn. App. at 864. "Legal causation is generally a question of law." Lowman v. Wilbur, 178 Wn.2d 165, 177, 309 P.3d 387 (2013).

Taylor's claims of malpractice and breach of fiduciary duty are predicated upon Cairncross's alleged failure to discharge its duty by ensuring that the stock redemption was enforceable under the applicable law. According to McDermott, had Cairncross capably discharged its duty, the stock redemption would have

been in compliance with Idaho law. For instance, given that Cairncross was counsel for the majority shareholder, it "could have and should have insisted that actions be taken that would have made the transaction, the Stock Redemption Agreement and related agreements and instruments legal and enforceable in accordance with their terms." Indeed, "[i]n his capacity as the majority shareholder, Reed Taylor could have voted and adopted a shareholder resolution authorizing the use of capital surplus to purchase his shares," and Cairncross "had countless opportunities to ensure that a shareholder resolution was presented and adopted by AIA Services' shareholders." Obtaining the opinion letter was insufficient for Cairncross to discharge its duty, McDermott asserts, because Cairncross was "not entitled to rely upon the opinion letter because they were not addressees thereof and the opinion letter expressly stated that it was only for Reed Taylor's benefit and use." Moreover, as explained by McDermott, "The opinion letter could not make the transaction legal; the obtaining of an opinion letter is only a part of exercising the degree of care, skill and knowledge that a reasonably prudent attorney would exercise . . . in a transaction of the magnitude of the one with AIA Services."

However, given that it did not author the opinion letter, Cairncross argues that Taylor should not be permitted to seek recourse against it. According to Cairncross, permitting the recipient of an opinion letter to seek recourse against the recipient's own legal representative "would result in tremendous inefficiencies and expense and effect a judicially created sea-change in the handling and structure of complex transactions throughout Washington and the United States."

- 17 -

Br. of Respondent at 41. Whether this will or will not be so is, at best, a matter of conjecture. What is clear, however, is that the issuance of the opinion letter could not make the stock purchase transaction legal. And Taylor sought out independent counsel to further his goal of legally selling his AIA shares to AIA.

Taylor may seek recourse against Cairncross as his legal representative. McDermott's testimony contains evidence that, but for Cairncross's alleged negligence, the harm to Taylor would not have occurred. Furthermore, Cairncross fails to offer a cognizable basis for limiting the consequences of its alleged negligence. Taken in the light most favorable to Taylor, his expert's testimony, with regard to proximate causation, is sufficient to survive summary adjudication.

IV

Cairncross next contends that Taylor agreed to Cairncross providing a limited scope of representation. Specifically, Cairncross asserts that, with regard to the issues of "corporate authority and enforceability under Idaho law," Taylor agreed that Cairncross's representation was to be limited so as to exclude these issues. Therefore, Cairncross asserts, regardless of our treatment of the trial court's actual bases for granting summary judgment, we should nonetheless affirm because Taylor agreed to a limited scope of representation.[19] We

---

[19] We may affirm the trial court's grant of summary judgment on any basis adequately supported by the record. Davidson Serles & Assocs. v. City of Kirkland, 159 Wn. App. 616, 624, 246 P.3d 822 (2011).

disagree. Although, during the time that Taylor was represented by Cairncross,[20] a Washington lawyer was permitted to "limit the objectives of the representation if the client consents after consultation," former RPC 1.2(c) (2002), the record reveals that whether Taylor agreed to a limited scope of representation presents, at best for Cairncross, a disputed question of fact.[21]

We begin by examining what was said and done by the parties at the time of Cairncross's representation—nearly 20 years ago. In March 1995, Cairncross agreed to represent Taylor "in the matter of the sale of his stock in AIA Services." This broad language does not suggest that Taylor agreed to any efforts by Cairncross to exempt itself from responsibility for issues of corporate authority and enforceability under Idaho law.

Thereafter, Frank Taylor wrote the following to a colleague: "What about: (1) The issue of their authority to enter into the Stock Redemption Agreement— Riley's proposal says Co.'s authority to do this and to close & consummate the transaction is dependent upon . . . SH approval . . . ." This internal memorandum indicates that Cairncross was working on an issue that it now claims was exempted from the scope of representation by agreement. Cairncross's billing records—which included the following descriptions, "Analysis re need for shareholder meeting," and "Analysis re corporate authority issues"—corroborate

---

[20] The trial court did not conduct a choice of law analysis. Instead, it provisionally held that Washington law was applicable. Cairncross agrees. We therefore rely on Washington law in declining to affirm based on Cairncross's limited scope of representation theory.

[21] In addition, we note that McDermott opined that Cairncross's purported limited scope of representation would have been "unreasonable" and would have left Taylor inadequately represented. This also raises an issue in need of resolution as to whether Cairncross could provide Taylor with limited representation without advising him to seek additional independent counsel for those matters allegedly excluded from Cairncross's representation.

the content of the memorandum.[22]

Together, the foregoing evidence suggests that after Cairncross and Taylor entered into a general fee agreement, they did not subsequently agree to limit the scope of Cairncross's representation. Rather, Cairncross performed work on issues of corporate authority, charged Taylor for that work, and received compensation from Taylor.

Nevertheless, in asserting that a limited scope of representation was, in fact, agreed to by Taylor, Cairncross directs our attention to Taylor's testimony in his Idaho suit against Eberle. Cairncross avers, "Taylor himself testified that Eberle Berlin—and not anyone else—was tasked exclusively with 'ensur[ing] the redemption of my shares had all necessary consents and did not violate any laws.'" Br. of Respondents at 36-37 (quoting Clerk's Papers at 78-79). From this, Cairncross maintains that "Taylor unequivocally understood and agreed that Cairncross's representation excluded issues of corporate authority and enforceability under Idaho law." Br. of Respondents at 37.

Although Taylor's testimony may be interpreted in this manner, it is not the *only* reasonable interpretation. An examination of Taylor's testimony in Idaho confirms that the interpretation advanced by Cairncross is by no means the only one that could be reached by a trier of fact.

In Idaho, Taylor submitted an affidavit, wherein he explained that both Cairncross and Eberle had provided him with legal representation.

> I retained Scott Bell [of Cairncross] to represent[] me in

---

[22] Taylor paid Cairncross for the work that was reflected in these billing records.

connection with negotiating and drafting the Redemption Agreement . . . , the $6 Million Promissory Note . . . and the ancillary agreements. Mr. Bell and his firm were not retained by me to act as counsel for AIA Services; rather, that job was left to my attorneys at Eberle Berlin.

Taylor, the majority shareholder, elaborated on his subjective understanding of the duties that he and AIA Services were owed by Eberle.

> I was never advised orally or in writing that Riley, Turnbow and Eberle Berlin were no longer my attorneys and that I could not rely upon them. The fact that the Opinion Letter was drafted and delivered to me only confirmed that they had obligations to me as my attorneys. At no time, did Richard Riley, Robert Turnbow or Eberle Berlin advise me, orally or in writing, that I was responsible for hiring or retaining a separate attorney for AIA Services to ensure that all corporate formalities and laws were complied with for the redemption of my shares. Had I known that I could not rely upon them or their Opinion Letter, I would have retained new counsel for AIA Services for the redemption of my shares in 1995.

Taylor then clarified that no other attorneys had been retained by him or by AIA to ensure that the redemption agreement was completed properly.

> I would have never agreed to sell my shares without being provided the Opinion Letter by Mr. Riley, Mr. Turnbow and Eberle Berlin. I relied upon Mr. Riley, Mr. Turnbow and Eberle Berlin to provide the legal representation necessary to legally and properly complete the redemption of my shares for me and AIA Services. Neither I nor AIA Services had any other attorneys retained for the purpose of providing the legal representation to ensure the redemption of my shares had all necessary consents and did not violate any laws.

Cairncross fixates on the final sentence of Taylor's preceding testimony, arguing that it constitutes an admission of Taylor's agreement to a limited scope of representation with Cairncross. Taylor offers a different characterization. According to Taylor, this testimony, considered in context, evidences his belief that, "as the CEO and majority shareholder, he controlled who represented AIA

- 21 -

and that the Idaho Lawyers owed him and the other shareholders duties too." Br. of Appellant at 20.

Taylor's characterization is supported by his deposition testimony in this case. When he was deposed by Cairncross prior to its motion for summary judgment, Taylor explained his understanding that he had been represented by both Cairncross and Eberle.

> Q: Sir, isn't it the case that the fact of the matter is you relied on Mr. Riley, Mr. Turnbow, and Eberle Berlin to provide the legal representation necessary to legally and properly complete AIA's redemption of your shares?
>
> . . . .
>
> A: They were doing the work for AIA and they'd done work for them for years, and Scott Bell was hired to represent me in those transactions.
>
> . . . .
>
> Q: Let me try it a different way.
> A: Scott Bell was working with them, and he was there to make sure mine was done correctly, for my protection.
> Q: Let me try it a different way. I'm going to read you a statement and ask you if it's true or if it's false, okay? You relied on Mr. Turnbow, Mr. Riley and Eberle Berlin to provide the legal representation necessary to legally and properly complete AIA's redemption of your shares. True statement or false statement?
>
> . . . .
>
> A: I guess it depends on what context it's in.
>
> . . . .
>
> A: I mean, I relied on them, but it was -- they weren't the only ones that was relied. So I don't know how to answer that question.

Taylor then disavowed the suggestion that he had agreed with Cairncross to a limited scope of representation and again explained his understanding that he had been represented by both Cairncross and Eberle.

> Q: And you looked at a number of memos today from Scott Bell to yourself, correct?
> A: Correct.

Q: And in any of those memos that you looked at, did you see any advice or words or language from Mr. Bell telling you that his representation of you was limited in any way?

A: No.

Q: And Mr. Bell never asked for such limitation of representation from you, did he?

A: Never.

. . . .

Q: And that Mr. Hollon went through and quoted a bunch of your testimony and asked if it was true?

A: Yes.

Q: Okay. And just so we're clear for the record, the context of that testimony was because you were testifying in the case against those attorneys, correct?

A: Correct.

Q: And at no time have you ever offered any testimony in that case that you had no claims against Scott Bell or any other attorney at Cairncross?

A: Correct.

Taylor's explanation of the portion of his testimony seized upon by Cairncross is sufficient to withstand summary adjudication pursuant to CR 56. Because Taylor's testimony did not directly contradict itself and because Taylor provided a reasonable explanation for the potential inconsistencies, the rule barring the use of contradictory testimony to create a genuine issue of material fact is inapplicable.

"'"When a party has given clear answers to unambiguous [deposition] questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."'" Cornish Coll. of the Arts v. 1000 Virginia Ltd. P'ship, 158 Wn. App. 203, 227, 242 P.3d 1 (2010) (alteration in original) (quoting Marshall v. AC&S, Inc., 56 Wn. App. 181, 185, 782 P.2d 1107 (1989) (quoting Van T. Junkins & Assocs., Inc. v. U.S.

- 23 -

Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984)). This rule is a narrow one. The "self-serving affidavit" must "directly contradict" the affiant's "unambiguous sworn testimony" previously given. Kaplan v. Nw. Mut. Life Ins. Co., 100 Wn. App. 571, 576, 990 P.2d 991, 6 P.3d 1177 (2000); accord Berry v. Crown Cork & Seal Co., 103 Wn. App. 312, 322, 14 P.3d 789 (2000) ("While [the] statements contain potential inconsistencies, they are not necessarily contradictory, and certainly do not rise to the level of clear contradiction necessary to invoke the Marshall rule."). Moreover, if the subsequent affidavit offers an explanation for previously given testimony, whether the explanation is plausible is an issue to be determined by the trier of fact. Safeco Ins. Co v. McGrath, 63 Wn. App. 170, 175, 817 P.2d 861 (1991).

Taylor's testimony falls outside the narrow ambit of this rule. As an initial matter, this case does not present the traditional scenario to which the rule applies, in which a party—in an effort to create a genuine issue of material fact—introduces a self-serving affidavit that directly contradicts that party's own unambiguous sworn testimony. Cf. Marshall, 56 Wn. App. at 183-84. More importantly, Taylor's testimony is neither unambiguous nor in direct contradiction to itself. Instead, as Taylor explained when he was deposed by Cairncross, he understood that both Cairncross and Eberle were providing him with legal representation. There were independent facts supporting his understanding, including his belief that, as CEO and majority shareholder, he was, in essence, the embodiment of the corporation and, thus, could select the legal representative responsible for carrying out the transaction between the

corporation and its controlling shareholder in a proper fashion. Thus, the single sentence taken from his declaration in a different case—to which Cairncross was not a party—does not preclude consideration of either Taylor's other testimony or the abovementioned nontestimonial evidence predating this litigation.

Given our conclusion that genuine issues of material fact exist, we decline to affirm the trial court's grant of summary judgment on this independent basis.

V

Taylor next contends that the trial court erred by refusing to consider the declarations of Gary Libey and of Taylor's counsel, which were submitted after the court's oral grant of summary judgment but before the written order memorializing its ruling was filed. Contrary to Taylor's contention, the trial court record suggests that the trial court did, in fact, consider the declarations. In denying Taylor's motion for reconsideration on May 16, 2013, the trial court "reviewed the files and records herein." By that date, the declarations in dispute, which were filed on April 2, 2013, were, presumably, among the "files and records" reviewed by the trial court.[23]

Even if the trial court did not, however, consider the aforementioned declarations, and even if its failure to do so was erroneous, the manner in which we dispose of this appeal would not be impacted.[24] The additional declarations filed by Taylor were intended to offer evidence of proximate causation and to

[23] The fact that Taylor's motion for reconsideration referenced the declarations lends further credence to the notion that they were considered by the trial court.

[24] Our discussion of these additional declarations is not intended to have any prospective impact. On remand, the law of the case doctrine will not affect the admissibility or nonadmissibility of this testimony.

indicate that the Idaho trial court had not been misled. Our ruling, reversing the trial court on these issues, moots this claim of error.

VI

Both Cairncross and Taylor seek to recover costs on appeal. Cairncross also seeks an award of attorney fees on appeal. Taylor, on the other hand, requests that the issue of attorney fees be reserved for the trial court to resolve on remand.

Pursuant to RAP 14.2, a party that "substantially prevails" on appeal is entitled to recover costs. Where the dismissal of a party's claim as a result of summary judgment is reversed on appeal, costs may be awarded. See, e.g., Sorrel v. Eagle Healthcare, Inc., 110 Wn. App. 290, 300, 38 P.3d 1024 (2002). However, "[w]here a party has succeeded on appeal but has not yet prevailed on the merits," an award of attorney fees should abide the ultimate resolution of the issues in the case. Riehl v. Foodmaker, Inc., 152 Wn.2d 138, 153, 94 P.3d 930 (2004).

Given the manner in which we resolve this appeal, Taylor is the substantially prevailing party and, as such, is entitled to recover costs on appeal. However, because the merits of his claims have not yet been fully decided, it is premature for us to order an award of attorney fees. Cairncross has not prevailed on appeal and, thus, it is not entitled to recover appellate costs. Its fee request, as with Taylor's, must abide ultimate resolution of the lawsuit.[25]

_____

[25] On appeal, Taylor argues that the trial court abused its discretion by denying his motion to amend his complaint. After Cairncross had already moved for summary judgment,

Reversed and remanded.

_Dwyer, J._

We concur:

---

Taylor unsuccessfully moved to amend and supplement his complaint in order to add three new causes of action—(1) violation of Idaho's Consumer Protection Act; (2) declaratory relief; and (3) equitable estoppel.

CR 15(a) provides that "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." "A motion to amend the pleadings is addressed to the sound discretion of the trial court and will not be overturned except for abuse of that discretion." Culpepper v. Snohomish County Dep't of Planning & Cmty. Dev., 59 Wn. App. 166, 169, 796 P.2d 1285 (1990). Leave to amend should be freely given unless it would result in prejudice to the nonmoving party. Herron v. Tribune Publ'g Co., 108 Wn.2d 162, 165, 736 P.2d 249 (1987). In determining whether prejudice would result, a court can consider potential delay, unfair surprise, or the introduction of remote issues. Herron, 108 Wn.2d at 165-66. Kirkham v. Smith, 106 Wn. App. 177, 181, 23 P.3d 10 (2001).

At the time the trial court ruled, the CR 56 motion was pending. That will not be the case on remand.

The trial court's ruling was an interlocutory one, which may be revisited upon remand. Given its interlocutory nature and given the change in circumstances, we need not further review this claim of error.

- 27 -