IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

McCLINCY BROTHERS FLOOR ) 
COVERING INC. and TIM McCLINCY, ) No. 78283-5-I
)
   Appellants, ) DIVISION ONE
)
  v. )
)
ERIC ZUBEL and his marital community;) UNPUBLISHED OPINION
and ERIC ZUBEL, P.C., )
) FILED: August 5, 2019
   Respondents. )
_____)

SMITH, J. — As a general rule, if a bankruptcy debtor fails to report a cause of action in bankruptcy and then obtains a discharge or confirmation, a trial court may apply judicial estoppel to bar the action. In 2017, McClincy Brothers Floor Covering Inc. (company) and its owner, Tim McClincy (together the McClincy parties) sued their former attorney, Eric Zubel, for malpractice related to Zubel's representation of the McClincy parties in a 2013 lawsuit. Because McClincy did not disclose his malpractice claims during his intervening bankruptcy and because he has not established that any exception to the general rule applies here, the trial court did not err when it dismissed McClincy's claims. But the company is a separate legal entity from McClincy, and Zubel has not established that the company's separate legal entity status should be ignored. Therefore, the trial court did err by dismissing the company's claims against Zubel solely because McClincy is the company's sole owner. We affirm in part, reverse in part, and remand for further proceedings.

FACTS

In 2013, the company sued its former clients, Trish and Collin Carpenter, and a former project manager, Randall Brooks (underlying lawsuit). The Carpenters filed a third party complaint against McClincy. Zubel represented both the company and McClincy in the underlying lawsuit until September 2014, when the McClincy parties terminated Zubel and hired a new attorney.

Brooks and the Carpenters prevailed in the underlying lawsuit. Specifically, the court dismissed the company's claims in their entirety and entered judgment against the McClincy parties in February 2015. Some components of the judgment were entered against the company and McClincy individually, while others were entered against the company and McClincy jointly and severally.

The McClincy parties appealed the judgment to this court. While that appeal was pending, and after attempts to negotiate a stay of the judgment were unsuccessful, McClincy (but not the company) filed a voluntary chapter 11 bankruptcy in January 2016. In the section of McClincy's bankruptcy schedules asking whether he had any "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment," McClincy responded no. McClincy also responded no to the section of his schedules directing him to list any "[o]ther contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims." McClincy later amended his schedules to list the then-pending appeal of the underlying lawsuit as well as a "Bad Faith/Insurance Coverage Claim." But his amended schedules still

2

responded no when asked to list any other "contingent and unliquidated claims of every nature, including counterclaims . . . and rights to set off claims."

In his schedule of creditors with unsecured claims, McClincy listed Zubel's claim for fees arising out of the underlying lawsuit and indicated that the claim was disputed.[1] Zubel timely filed a proof of claim on March 4, 2016, indicating that the amount of his claim as of that date was $96,954.24. McClincy did not object to Zubel's proof of claim.

On April 28, 2016, McClincy filed a First Amended Disclosure Statement (disclosure statement) and a proposed First Amended Plan of Reorganization (plan). The purpose of the disclosure statement was to explain the proposed plan and provide creditors with material needed to decide whether to vote to accept the plan. The disclosure statement explained how the proposed plan classified each creditor's claim into 1 of 10 classes. Zubel's claim was classified as part of class 10, the "Allowed General Unsecured Claims." The disclosure statement also summarized how the claims within each class would be treated under the proposed plan and whether each class would be impaired or unimpaired by the plan.[2] As relevant to Zubel's claim, class 10 claims were impaired under the proposed plan. Class 8, which consisted solely of the Carpenters' and Brooks' claims arising from the judgment in the underlying

---

[1] Under Fed. R. Bankr. P. Rule 3003(c)(2), a creditor whose claim is scheduled as disputed must timely file a proof of claim to be treated as a creditor with respect to that claim for purposes of voting and distribution.

[2] Generally, a class of claims is "impaired" under a plan if the plan alters the legal, equitable, or contractual rights of the holder of any claim within the class. 11 U.S.C. § 1124.

lawsuit, was the only other impaired class.

Class 10, including Zubel, voted to accept the proposed plan, but class 8 voted to reject it. Objections to confirmation of the plan were later resolved in a Second Amended Plan of Reorganization, and on June 29, 2016, the bankruptcy court confirmed that plan. The bankruptcy court later approved certain postconfirmation modifications to the plan and confirmed a Fourth Amended Plan of Reorganization (confirmed plan).

On July 21, 2017, the McClincy parties filed this malpractice lawsuit against Zubel. Zubel moved for summary judgment, arguing that the McClincy parties' claims were barred (1) by judicial estoppel because McClincy did not disclose them as potential assets in his bankruptcy case and (2) by res judicata because McClincy did not object to Zubel's proof of claim.

The McClincy parties opposed the motion, arguing among other things that (1) Zubel failed to establish that the elements of judicial estoppel had been satisfied; (2) Zubel's judicial estoppel theory did not apply to chapter 11, as opposed to chapter 7, bankruptcy cases; (3) judicial estoppel could not apply to the company; (4) res judicata was inapplicable because McClincy marked Zubel's claim as "disputed" in his bankruptcy schedules; and (5) the trial court should impose CR 11 sanctions against Zubel's counsel for filing "a summary judgment motion with no evidence and no authority." In reply, Zubel submitted a declaration from Charles Robinson, a bankruptcy attorney who opined among other things that McClincy could not have obtained plan confirmation without Zubel's vote. Additionally, Zubel argued for the first time in his reply that

4

because McClincy did not "specifically and unequivocally" retain the right under the confirmed plan to pursue his malpractice claim against Zubel, McClincy lacked standing to bring the claim, and the trial court lacked jurisdiction to hear it.

The trial court granted Zubel's motion for summary judgment. The McClincy parties then moved for reconsideration. They argued that the trial court erred by considering the Robinson declaration and reinforced their arguments regarding judicial estoppel and res judicata. The trial court denied reconsideration but indicated in its order that it did not consider Robinson's opinion that McClincy lacked standing. The McClincy parties appeal.

ANALYSIS

Judicial Estoppel of McClincy's Claims

The McClincy parties argue that the trial court erred by dismissing McClincy's claims on judicial estoppel grounds. We disagree.

"'Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.'" Arkison v. Ethan Allen, Inc., 160 Wn.2d 535, 538, 160 P.3d 13 (2007) (quoting Bartley-Williams v. Kendall, 134 Wn. App. 95, 98, 138 P.3d 1103 (2006)). The doctrine is not designed to protect litigants. Chonah v. Coastal Vills. Pollock, LLC, 5 Wn. App. 2d 139, 147, 425 P.3d 895 (2018), review denied, 192 Wn.2d 1012 (2019). Rather, "[t]he doctrine seeks 'to preserve respect for judicial proceedings,' and 'to avoid inconsistency, duplicity, and . . . waste of time.'" Arkison, 160 Wn.2d at 538 (alterations in original) (internal quotation marks omitted) (quoting Cunningham v. Reliable Concrete

5

Pumping, Inc., 126 Wn. App. 222, 225, 108 P.3d 147 (2005)).

In Arkison, our Supreme Court set forth the following three factors to "guide a trial court's determination of whether to apply the judicial estoppel doctrine":

> (1) whether "a party's later position" is "clearly inconsistent with its earlier position"; (2) whether "judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled'"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

Arkison, 160 Wn.2d at 538-39 (quoting New Hampshire v. Maine, 532 U.S. 742, 750-51, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)).

The Arkison factors are not an "'exhaustive formula,'" and additional considerations may guide a court's decision whether to apply the judicial estoppel doctrine. Arkison, 160 Wn.2d at 539 (quoting New Hampshire, 532 U.S. at 751). For example, "[a]pplication of the doctrine may be inappropriate 'when a party's prior position was based on inadvertence or mistake.'" Arkison, 160 Wn.2d at 539 (internal quotation marks omitted) (quoting New Hampshire, 532 U.S. at 753). Furthermore, "[a]s a general rule, if a debtor in a bankruptcy proceeding fails to report a cause of action and obtains a discharge or confirmation, a trial court may apply judicial estoppel to bar the action." Arp v. Riley, 192 Wn. App. 85, 92, 366 P.3d 946 (2015). "This prevents a debtor from protecting the asset from creditors by representing to the bankruptcy court that no claim exists and then asserting in another court that the claim does exist." Arp, 192 Wn. App. at 92.

In short, judicial estoppel is flexible and fact-based. Chonah, 5 Wn. App. 2d at 148. "[C]ourts must apply [it] at their own discretion; they are not bound to apply it but rather must determine on a case-by-case basis if applying the doctrine is appropriate." Arp, 192 Wn. App. at 92. To that end, we review a trial court's decision to apply judicial estoppel for abuse of discretion. Miller v. Campbell, 164 Wn.2d 529, 536, 192 P.3d 352 (2008). "A decision constitutes an abuse of discretion when it is manifestly unreasonable or based on untenable grounds or reasons." Gosney v. Fireman's Fund Ins. Co., 3 Wn. App. 2d 828, 880, 419 P.3d 447, review denied, 191 Wn.2d 1017 (2018). We look to federal cases as persuasive when determining whether judicial estoppel bars a claim that a debtor failed to disclose in bankruptcy. See, e.g., Arp, 192 Wn. App. at 92 (citing Ah Quin v. County of Kauai Dep't of Transp., 733 F.3d 267, 271 (9th Cir. 2013)); Cunningham, 126 Wn. App. at 227 & n.10 (citing numerous federal cases).

Here, the McClincy parties concede for purposes of their appeal that the first of the three Arkison factors is satisfied. Thus, the only question before us is whether, based on the remaining two Arkison factors viewed in light of relevant bankruptcy-related considerations, the trial court abused its discretion by applying judicial estoppel to bar McClincy's claims. For the reasons discussed below, we conclude that it did not.

*The Second Arkison Factor: Judicial Acceptance*

As discussed, the second Arkison factor directs us to consider whether "'judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.'" Arkison, 160 Wn.2d at 539. Under this factor, "[a]cceptance of an initial position is a precondition to the application of judicial estoppel." Taylor v. Bell, 185 Wn. App. 270, 284, 340 P.3d 951 (2014). In the bankruptcy context, "[t]he bankruptcy court may 'accept' the debtor's assertions by relying on the debtor's nondisclosure of potential claims in many . . . ways," such as by confirming a plan. Hamilton, 270 F.3d at 784.

Here, the record reflects that McClincy had knowledge of a potential malpractice claim against Zubel before McClincy filed bankruptcy. Specifically, McClincy, through counsel, threatened—once in January 2015, and again in November 2015—to counterclaim for malpractice if Zubel attempted to collect his fees. Furthermore, once judgment was entered in the underlying lawsuit, McClincy was, as a matter of law, charged with "knowledge of all the facts which may give rise to his . . . cause of action for negligent representation." Richardson v. Denend, 59 Wn. App. 92, 96-97, 795 P.2d 1192 (1990). He also had an affirmative duty to disclose that cause of action to the bankruptcy court. Cunningham, 126 Wn. App. at 229-30. Indeed, "[t]he debtor's duty to disclose potential claims as assets does not end when the debtor files schedules, but instead continues for the duration of the bankruptcy proceeding." Hamilton, 270 F.3d at 785; see also FED. R. BANKR. P. 1009(a) (Schedules may be amended as

a matter of course before the case is closed.). "The continuing nature of the duty to assure accurate schedules of assets is fundamental because the viability of the system of voluntary bankruptcy depends upon full, candid, and complete disclosure by debtors of their financial affairs." In re Searles, 317 B.R. 368, 378 (B.A.P. 9th Cir. 2004), aff'd, 212 F. App'x 589 (9th Cir. 2006).

Nevertheless, McClincy did not disclose a potential malpractice claim in his original bankruptcy schedules filed in January 2016. He also did not disclose the claim in his amended bankruptcy schedules, nor does the claim appear as an asset in the disclosure statement. And there is no indication in the record that McClincy ever amended his schedules to include his claim against Zubel. Because the bankruptcy court "base[s its] actions on the disclosure statements and schedules," the bankruptcy court, by confirming the plan, accepted that McClincy had no claims against Zubel. See Hamilton, 270 F.3d at 784. And if the trial court were to permit McClincy's malpractice claim to move forward, it would create the perception that either it or the bankruptcy court was misled. Therefore, the judicial acceptance factor is satisfied.

The McClincy parties disagree, arguing that Zubel failed to prove that the bankruptcy court accepted McClincy's representation that he had no malpractice claim against Zubel. They rely on Taylor to support their argument, but their reliance is misplaced. In that case, Reed Taylor sued an Idaho law firm for malpractice. Taylor, 185 Wn. App. at 276-77. The Idaho court dismissed Taylor's claim after it concluded there was no attorney-client relationship between Taylor and the Idaho firm. Taylor, 185 Wn. App. at 277. Taylor then

sued his Washington attorneys, Cairncross & Hempelmann PS (Cairncross), in King County Superior Court. Taylor, 185 Wn. App. at 278. The court dismissed Taylor's claims on judicial estoppel grounds, finding that Taylor took inconsistent positions by claiming in the Idaho court that the Idaho attorney was the only one representing him, and then later claiming in King County Superior Court that Cairncross represented him. Taylor, 185 Wn. App. at 278-79.

We reversed, observing that Taylor's earlier position was "undoubtedly rejected" by the Idaho court when it ruled that there was no attorney-client relationship between Taylor and the Idaho firm. Taylor, 185 Wn. App. at 283-84. Put another way, we recognized that where the plaintiff's initial position is affirmatively rejected by the first court, there is no risk that another court will be misled by accepting the plaintiff's later inconsistent position. But here, there is no indication that as in Taylor, the bankruptcy court affirmatively rejected McClincy's representation that he had no claim against Zubel. Therefore, Taylor is unpersuasive.

The McClincy parties also rely on Arp to argue that Zubel's failure to prove acceptance is fatal to his judicial estoppel argument. But the claim at issue in Arp was a personal injury claim that arose from a *postbankruptcy* motor vehicle accident that the bankruptcy code did not require the debtor to disclose. Arp, 192 Wn. App. at 88-89, 98. Here, by contrast, McClincy's malpractice claim arose *before* he filed bankruptcy, and he had an affirmative duty to disclose it. See Cunningham, 126 Wn. App. at 229-30 (debtor has express, affirmative duty to disclose all assets). The McClincy parties' reliance on Arp is misplaced.

The McClincy parties next argue that the judicial acceptance factor is not satisfied unless Zubel proves "'that disclosure would have changed the outcome of the bankruptcy.'" They rely on Gosney to support their argument, but Gosney's judicial estoppel analysis is distinguishable because in that case, as in Arp, all of the debtor-plaintiff's damages arose *postbankruptcy*. Gosney, 3 Wn. App. 2d at 884. We did observe in Gosney that the defendant's "failure to produce *any* evidence that disclosure would have changed the outcome of the bankruptcy proceedings precludes application of judicial estoppel." Gosney, 3 Wn. App. 2d at 884. But properly read in the context of Gosney's facts, our statement merely suggests that when a defendant argues that judicial estoppel bars a debtor-plaintiff's *postbankruptcy* claims, which the debtor-plaintiff is not required to disclose, the defendant must produce *some* evidence that disclosure would have changed the outcome of the bankruptcy. That statement does not apply here because as discussed, McClincy's claims arose *prebankruptcy* and he was required to disclose them.

The McClincy parties next rely on Haslett v. Planck, 140 Wn. App. 660, 166 P.3d 866 (2007), to argue that a bankruptcy court does not necessarily accept the debtor's prior position by confirming a bankruptcy plan. But in Haslett, the debtors amended their bankruptcy schedules to include the claim at issue, and their chapter 13 plan was also modified so that any recovery would benefit creditors. Haslett, 140 Wn. App. at 666-67. Indeed, this fact was "[c]entral" to the debtors' argument that the bankruptcy court did not "accept" their prior position. Haslett, 140 Wn. App. at 666-67. Here, by contrast, there is no

indication that McClincy amended his schedules to include a malpractice claim against Zubel or that the confirmed plan has been modified to ensure that any proceeds of the claim will benefit creditors. Haslett is unpersuasive.

As a final matter, the McClincy parties assert that "[a] bankruptcy court's acceptance has been implied *only* when the court granted a no asset discharge."[3] They cite to two cases, Harris v. Fortin, 183 Wn. App. 522, 333 P.3d 556 (2014), and Cunningham, in which we have applied judicial estoppel to bar undisclosed claims following a no-asset discharge. But that a no-asset discharge may be *sufficient* to satisfy the judicial acceptance factor does not mean that a no-asset discharge is *necessary* to satisfy it. Indeed, the McClincy parties cite no authority to support the proposition that a no-asset discharge is a prerequisite to judicial estoppel. Therefore, their argument fails.

*The Third Arkison Factor: Unfair Advantage or Detriment*

The third and final Arkison factor directs us to consider "'whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" Arkison, 160 Wn.2d at 539 (quoting New Hampshire, 532 U.S. at 750-51).

Here, McClincy would obtain an unfair advantage if not estopped. Specifically, despite the fact that McClincy did not comply with his duty to fully disclose his assets to the bankruptcy court and to his creditors, he obtained confirmation of a plan that gave him more time to repay his class 8 and class 10 creditors. Therefore, the third Arkison factor is satisfied. Cf. Ah Quin, 733 F.3d

_____

[3] (Emphasis added.)

12

at 271 (explaining that plaintiff-debtors who later pursue undisclosed claims obtain an unfair advantage by obtaining discharge or plan confirmation without allowing creditors to learn of pending or soon-to-be-filed lawsuits).

The McClincy parties argue that "[w]hen the moving party fails to prove that the debtor plaintiff obtained a benefit from the failure to disclose a claim, judicial estoppel is improper." But none of the five cases that the McClincy parties cite to support this argument are persuasive. Two of them do not address judicial estoppel in the postbankruptcy context. See Nw. Cascade, Inc. v. Unique Constr., Inc., 187 Wn. App. 685, 701 n.9, 351 P.3d 172 (2015) (inconsistent positions presented to two divisions of the Court of Appeals); Mercer Island Sch. Dist. v. Office of Superintendent of Pub. Instruction, 186 Wn. App. 939, 972 & n.25, 347 P.3d 924 (2015) (inconsistent positions presented to administrative law judge, superior court, and this court). And of the remaining three, two are distinguishable because the claims at issue arose postbankruptcy and the debtor had no duty to disclose them. See Johnson v. Si-Cor Inc., 107 Wn. App. 902, 911-12, 28 P.3d 832 (2001); Arp, 192 Wn. App. at 89, 98. In the final case, Miller v. Campbell, the bankruptcy court reopened the debtor-plaintiff's bankruptcy case and appointed a trustee to administer a previously undisclosed childhood sexual abuse claim for the benefit of the estate. Miller, 164 Wn.2d at 534-35. Our Supreme Court held that judicial estoppel would not apply under those circumstances, i.e., when the bankruptcy trustee has been substituted as the real party in interest to pursue the claim for the benefit of the bankruptcy estate. Miller, 164 Wn.2d at 543. But here, there is no indication that McClincy is

13

pursuing his claim other than on his own behalf. Therefore, the McClincy parties' argument is unpersuasive.

In short, the trial court did not abuse its discretion by applying judicial estoppel to bar claims that McClincy did not disclose to the bankruptcy court. Indeed, McClincy's arguments largely ignore that judicial estoppel in this context is the "general rule." Arp, 192 Wn. App. at 92; see also McFarling v. Evaneski, 141 Wn. App. 400, 403, 171 P.3d 497 (2007) (observing that judicial estoppel "is particularly well suited to protect the integrity of the bankruptcy process"); Ah Quin, 733 F.3d 271 (characterizing judicial estoppel of previously undisclosed claims as the "basic default rule" in the bankruptcy context). McClincy's arguments also fail to acknowledge that this general rule can be invoked in the bankruptcy context, "[i]ndependent of unfair advantage from inconsistent positions," "out of 'general consideration of the orderly administration of justice and regard for the dignity of judicial proceedings;' or to 'protect against a litigant playing fast and loose with the courts.'" In re Associated Vintage Grp., Inc., 283 B.R. 549, 566 (B.A.P. 9th Cir. 2002) (quoting Hamilton, 270 F.3d at 782, 785; Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990)).

Of course, there are exceptions to the general rule. For example, as already discussed, Washington courts have declined to apply judicial estoppel to claims that arise postbankruptcy—as in Arp and Gosney—and when the claim at issue is being pursued for the benefit of creditors—as in Haslett and Miller. Washington courts have also declined to apply judicial estoppel when a debtor's failure to disclose his claim is the result of mistake or inadvertence. See, e.g.,

14

Chonah (holding that judicial estoppel would not bar debtor's claim where debtor's attorney misunderstood the nature of the claim and mischaracterized it in the debtor's schedules, and debtor took immediate action to correct the error once known). But none of these exceptions are present in this case. Therefore, considering the Arkison factors in light of the need to protect the integrity of the bankruptcy process, the trial court did not abuse its discretion by applying the general rule here.

As a final matter, the McClincy parties contend that Zubel belatedly argued for the first time in his reply below that (1) he believed, and relied on his belief, that McClincy would not be pursuing a malpractice claim when he decided to vote in favor of the proposed plan; (2) McClincy lacked standing to pursue a malpractice claim; and (3) the trial court lacked jurisdiction to hear McClincy's malpractice claim. The McClincy parties are correct that the trial court erred to the extent it considered these belated arguments, and Zubel does not argue otherwise. But this court may affirm summary judgment on any basis supported by the record. Bavand v. OneWest Bank, 196 Wn. App. 813, 825, 385 P.3d 233 (2016). Here, the record—even without considering Zubel's belated arguments—supports the trial court's decision to dismiss McClincy's claim on judicial estoppel grounds. Therefore, reversal is not required.

### Judicial Estoppel of the Company's Claims

The McClincy parties argue that even if the trial court correctly applied judicial estoppel to bar McClincy's claims against Zubel, it abused its discretion by applying judicial estoppel to the company's claims. We agree.

15

Gosney is instructive. In Gosney, the trial court concluded that a bankruptcy debtor's undisclosed claims were judicially estopped, and then extended judicial estoppel to the claims of Pizza Time (PT), a company in which the debtor was the sole shareholder. Gosney, 3 Wn. App. 2d at 882-83. We reversed, characterizing the trial court's application of judicial estoppel to PT as "entirely unwarranted." Gosney, 3 Wn. App. 2d at 885. Specifically, we observed that PT was "a separate legal entity that *never* filed a bankruptcy petition" and that "[t]he trial court made no findings of alter ego, commingling of assets, or a failure to adhere to corporate formalities, or any other finding that could support a ruling extending judicial estoppel to PT." Gosney, 3 Wn. App. 2d at 882, 885. Rather, the trial court simply noted that the debtor was PT's sole shareholder. Gosney, 3 Wn. App. 2d at 883.

Here, as in Gosney, the company is a separate legal entity, and there is no indication in the record that it ever filed bankruptcy. And, as in Gosney, the trial court made no findings of alter ego, commingling of assets, failure to follow corporate formalities, or any other facts to support a ruling extending judicial estoppel to the company. Furthermore, Zubel's argument below was premised entirely on the fact that McClincy is the company's sole owner and that therefore McClincy and the company are "privies." In other words, as in Gosney, the trial court erred by extending judicial estoppel to the company based solely on the fact that McClincy is the company's sole owner.

Zubel argues that Gosney is distinguishable because it was decided after a jury trial, whereas this case was decided on summary judgment. But he does

not explain why this distinction is relevant—much less why it weighs in his favor. Therefore, his argument fails.

Zubel next asserts that we should follow decisions from other jurisdictions that have applied judicial estoppel both to parties who made inconsistent claims in prior litigation *and* to their "privies." But the cases he cites are not binding in Washington, and we decline to consider them.

Zubel also argues that the company should be estopped because by filing bankruptcy, "McClincy stayed collection efforts against both himself and [the company]." This argument is raised for the first time on appeal and is unsupported by citation to any authority. Therefore, we reject it. See Silverhawk, LLC v. KeyBank Nat'l Ass'n, 165 Wn. App. 258, 265, 268 P.3d 958 (2011) ("An argument neither pleaded nor argued to the trial court cannot be raised for the first time on appeal."); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (Arguments must be supported by authority.).

Finally, Zubel attempts to "flesh out" his privity argument by pointing out that (1) McClincy and the company are joint judgment debtors in the underlying lawsuit, (2) McClincy is employed by the company, and (3) McClincy and the company are coplaintiffs in this suit. But none of these facts are sufficient to extend judicial estoppel to the company. First, the record does not reflect the reasons that McClincy and the company are joint judgment debtors—much less whether those reasons support disregarding the company's separate legal entity status. Second, Zubel cites no authority supporting his argument that judicial estoppel should extend to an employer based on the bankruptcy-related

17

omissions of its employee. He cites Ensley v. Pitcher, but that case is distinguishable because it turned on the fact that an employer may be vicariously liable for an employee's *torts*. 152 Wn. App. 891, 903, 222 P.3d 99 (2009). And finally, the fact that McClincy and the company are coplaintiffs in this suit is unpersuasive because the company was a distinct client of Zubel's and will need to prove its own malpractice claims against Zubel regardless of its relationship to McClincy. Cf. RPC 1.13(a) (lawyer retained by an organization represents the organization); RPC 1.13(g) (lawyer representing an organization may *also* represent an individual constituent subject to RPC 1.7 regarding conflicts of interest). Therefore, Zubel's additional privity-based arguments fail.

### Res Judicata

The McClincy parties argue that the trial court erred to the extent that it applied res judicata to dismiss their claims. Because we conclude that McClincy's claims were properly dismissed on judicial estoppel grounds, we do not decide whether his claims were also properly dismissed on res judicata grounds. See Wash. State Farm Bureau Fed'n v. Gregoire, 162 Wn.2d 284, 307, 174 P.3d 1142 (2007) ("'Principles of judicial restraint dictate that if resolution of an issue effectively disposes of a case, we should resolve the case on that basis without reaching any other issues that might be presented.'" (internal quotation marks omitted) (quoting Hayden v. Mut. of Enumclaw Ins. Co., 141 Wn.2d 55, 68, 1 P.3d 1167 (2000))). But assuming without deciding that McClincy's claims are barred by res judicata, application of res judicata to the company's claims would

be error for the same reasons that application of judicial estoppel to the company was error.

## Admission of Robinson Declaration

The McClincy parties argue that the trial court committed reversible error by considering the Robinson declaration. We disagree.

In his declaration, Robinson explains how the bankruptcy code applies to McClincy's bankruptcy case and opines that (1) McClincy lacks standing to bring claims against Zubel and (2) McClincy could not have obtained plan confirmation without Zubel's vote. In short, the Robinson declaration contains a number of legal conclusions regarding the application of bankruptcy law to McClincy's bankruptcy case. Ordinarily, we would presume that the trial court ignored these improper conclusions on summary judgment. See Orion Corp. v. State, 103 Wn.2d 441, 462, 693 P.2d 1369 (1985) (on summary judgment, court is presumed to ignore improper legal conclusions contained in expert affidavit); see also Cano-Garcia v. King County, 168 Wn. App. 223, 249, 277 P.3d 34 (2012) ("[T]hat inadmissible evidence was presented to the trial court, without more, does not require reversal.").

Here, however, the trial court stated that in its ruling on reconsideration, it disregarded only Robinson's opinion that McClincy lacked standing to bring claims against Zubel. This statement suggests that the trial court did *not* ignore the remainder of the improper legal conclusions in the Robinson declaration. In other words, we cannot presume the trial court ignored the legal conclusions in the Robinson declaration.

19

Nevertheless, reversal is not required. As discussed, this court can affirm summary judgment on any basis supported by the record. Bavand, 196 Wn. App. at 825. Here, even without considering any of the legal conclusions in the Robinson declaration, the record supports the trial court's application of judicial estoppel to McClincy's claims. Therefore, even assuming the trial court erred by considering the Robinson declaration, that error does not require reversal.

The McClincy parties chiefly rely on State v. Clausing, 147 Wn.2d 620, 56 P.3d 550 (2002), to argue that the trial court's admission of the Robinson declaration requires reversal. But in Clausing, the legal opinion at issue was admitted during a jury trial. Clausing, 147 Wn.2d at 628. Here, the Robinson declaration was admitted on summary judgment where, as discussed, this court may affirm on any basis supported by the record. Therefore, Clausing is distinguishable and does not control.

## Sanctions

The McClincy parties argue that the trial court erred by declining to impose CR 11 sanctions on Zubel's counsel. We disagree.

CR 11(a) provides that by signing a motion, an attorney certifies that to the best of the attorney's knowledge, information, and belief after reasonable inquiry, the motion (1) "is well grounded in fact," (2) "is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law," (3) "is not interposed for any improper purpose," and (4) contains only denials of factual contentions that "are warranted on the evidence." If a motion is signed in violation of CR 11(a), the court may impose

sanctions on the person who signed it. CR 11(a). This court reviews a trial court's decision to deny sanctions for an abuse of discretion. Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 338, 858 P.2d 1054 (1993).

Here, the McClincy parties argued below that sanctions were warranted because Zubel's motion for summary judgment was a "motion with no evidence or authority." On appeal, the McClincy parties argue, more specifically, "that Zubel's motion was frivolous because he presented no evidence that the bankruptcy court accepted McClincy's statement or that McClincy obtained an unfair advantage." But this argument is unpersuasive because Zubel presented authority and argument below that judicial estoppel of undisclosed claims is the default rule in the bankruptcy context and that the default rule applies here. Therefore, the trial court did not abuse its discretion by denying the McClincy parties' request for sanctions.

The McClincy parties next assert that sanctions are warranted because in Gosney, this court "called the argument to extend judicial estoppel to a plaintiff's wholly owned corporation 'entirely unwarranted.'" But because Gosney was not decided until after the McClincy parties' claims were dismissed, this argument is unpersuasive.

Finally, the McClincy parties assert that at oral argument below, they cited as additional bases for sanctions (1) Zubel's submission of the Robinson declaration and (2) Zubel's new arguments on reply. But because the McClincy parties did not provide a verbatim report of proceedings, this assertion is

21

unsupported by any citation to the record. Therefore, we decline to consider it. See Christensen v. Munsen, 123 Wn.2d 234, 247, 867 P.2d 626 (1994) (declining to consider factual assertion not supported by citations to the record).

### Motion for Reconsideration

As a final matter, the McClincy parties argue that the trial court erred by denying their motion for reconsideration. "Motions for reconsideration are addressed to the sound discretion of the trial court and a reviewing court will not reverse a trial court's ruling absent a showing of manifest abuse of discretion." Wilcox v. Lexington Eye Inst., 130 Wn. App. 234, 241, 122 P.3d 729 (2005). Here, for reasons already discussed, the trial court did not abuse its discretion by declining to reconsider its dismissal of McClincy's claims. And because we reverse the trial court's dismissal of the company's claims, we need not consider whether the trial court erred by not reconsidering that dismissal. See Wash. State Farm Bureau Fed'n, 162 Wn.2d at 307 (declining to address additional issues on appeal when resolution of one issue effectively disposed of case).

We affirm the dismissal of McClincy's claims, reverse the dismissal of the company's claims, and remand for further proceedings.

_____
Smith, J.

WE CONCUR:

_____          _____
Chun, J.                          Schindler, J.